THE STATE v. D. R. PERKINS and W. J. LANGLEY.

*Larceny—Asportation—Evidence—Judge's Charge.*

On the trial of an indictment for larceny of a cow, a witness swore that he saw defendant shoot down the cow and then go to it and stoop down; that, about three months thereafter, he pointed out the place to the owner of the cow. The owner testified that, at that time, there were no remains of the carcass to be found at the place where the killing had been done: *Held*, that an instruction to the jury that the single fact that no portion of the carcass was found at the place of killing three months thereafter was evidence sufficient to warrant them in finding an asportation, was erroneous, although there was other evidence which, if it had been properly submitted to the jury, and believed, would have proved that fact.

This is an Indictment for Larceny of a cow, the property of William Keel, tried at March Term, 1889, of the Superior Court of PITT County, before *Connor, J.*

The prosecutor, William Keel, testified that he lost four cows before the last of November of last year; that he last saw them about the second week in November; missed them on Saturday before the fourth Sunday in November. He further testified as follows: "My cows were in the habit of going on some swamp lands about a mile from my house. On missing my cattle, I went over most of this marsh—not all of it. I found two places at which it appeared that cattle had been killed in the swamp, about a mile from my house and one-fourth to one-half mile from the house of the defendants."

Samuel Page was introduced for the State, and testified as follows: "On Friday of the second week of November, I started to a neighbor's house through the woods. I saw the defendants walking along. Langley was ahead of Perkins. I sat down on a log. Perkins walked off in a thick place. Langley walked a few steps and shot down the dark-red

heifer with a white streak up her back. *It was Mr. William Keel's heifer.* The other cattle ran off. Langley went up to the cow and stooped down. I went back home. I saw the cow plainly. I was about fifty yards from her. My cow was with them. Mr. Keel had forbidden me to go on his land, and when I first saw defendants I thought one of them was Mr. Keel, and stooped down on the log. I think it was about three-fourths of a mile from Mr. Keel's, and the time was about two hours by sun. I had not spoken to Mr. Keel for two years in consequence of a misunderstanding with him. I talked about what I had seen at the log-rolling, and then Mr. Keel asked me about it. Perkins attacked me about it, and said, 'What sort of talk is that you had this morning? Don't handle my name. I will put balls in you. I shall not say anything about it if you don't.' This occurred a little better than two months after the shooting. The cow was not marked."

William Keel, the prosecutor, being recalled, described an unmarked cow that he missed; color about that of the cow described by Page as shot. He testified further: " Page showed me, about three weeks ago, the place at which he said the cow was shot, after I had asked him about it. A man sitting on the log where Page said he sat could see another where he said that the defendants were standing. I found no intestines or signs of, anything having been killed there."

Moses King testified as follows: "I remember that D. A. Perkins sold me a cow with the ears cut off. It was in December, 1888. It was a brindle cow, with some white on it. I could not say that she had a white streak down her back. There was another man with Perkins when he brought the beef."

A great deal of testimony was offered in behalf of the defendants that, if believed by the jury, would have established an *alibi* for Perkins, and shown that the defendants

were not guilty, but it is not material in deciding the questions raised by the exceptions in this case.

The defendant's counsel requested the Court to instruct the jury—

1. That there was no evidence of an asportation.

2. That in criminal cases, a case cannot be made out by inference from testimony on the part of the defendants.

The Court declined to give the second instruction, and in response to the first request charged the jury, in lieu of the instruction asked, as follows:

1. That larceny was the felonious taking and carrying away of the personal property of another with the intent to appropriate it to the taker's use; that before they could convict, they must, upon the whole evidence, be satisfied beyond a reasonable doubt that the defendants took and carried away the cow; that it was done with a felonious intent, and was the property of William Keel; that they might consider the whole of the evidence in reaching a conclusion as to the defendants' guilt, and unless fully satisfied they should acquit.

2. That if there had been no other testimony as to the asportation except the evidence of Samuel Page, the Court should have instructed the jury that they should render a verdict of not guilty. But it was shown in evidence that the place at which the cow was shot was pointed out to the witness Keel, and, as the cow was not found at that place, the jury had the right to infer an asportation on the part of the defendants.

The defendants excepted to the refusal to give the instruction asked, and to the instruction given.

*The Attorney General,* for the State.

*Messrs. Harry Skinner, J. E. Moore* and *J. H. Tucker,* for the defendants.

AVERY, J.—after stating the case: We think that the second instruction asked for was properly refused, and that, upon the evidence, the question whether there was an asportation was one for the jury. The fact, if believed, that Perkins was in the habit of selling butchered cattle and going to the market accompanied by another man, the testimony that there was some resemblance between the hide of a cow sold to a witness and that which Page testifies he saw Langley shoot in the presence of Perkins, and the evidence of Page that Perkins threatened to shoot him (Page) if he again spoke of the killing, *might have been considered, if believed by the jury,* in passing on the question of the asportation, as well as the felonious intent on the part of Perkins, and that if the jury believed that Langley shot the cow and Perkins carried away the beef, it was material testimony as to both.

But we think that the Judge below erred when, instead of leaving the jury to determine whether the defendants had removed the cow, upon a consideration of all the circumstances bearing upon the asportavit, he told the jury that, but for the testimony of Keel, he would not have submitted the question to them, but, as Keel had found no cow at the place pointed out to him by Page, *the jury had the right to infer an asportation on the part of the defendants.*

The witness Keel went to the place where Page testified the cow was shot in November last, about three weeks before the Court was held in March following—not earlier than the latter part of February. The instruction given was fairly susceptible of the interpretation by the jury that the single circumstance that the prosecutor Keel failed to find any part of the carcass of a cow in February where one was killed about the last of November before, was of such weight that they might conclude from that detached fact that the cow shot by Langley had not only been removed, but carried away by the two defendants.

We cannot concur in the view that, because the jury conclude that nothing was found, after the lapse of three months since the killing, at the place where it was done, they would be justified on that finding alone (even if they discredited other testimony already mentioned as tending, if believed, to show a felonious taking, as well as an asportavit) in returning a verdict of guilty. It was the right and duty of the jury to consider all pertinent evidence found by them to be true in reaching a conclusion, and the instruction may have misled them.

We think that a new trial should be granted to the defendants.

Error.