THE STATE v. EDWARD TELFAIR.

*Assault, secret—Evidence of Identity.*

Upon the trial of an indictment for a secret assault, prosecutor testified that he was shot in the evening by some one standing behind a fence about six steps distant; that he could see a person at that time of the day for fifty yards, and he saw the person who shot as he ran off; that his size, complexion and appearance was that of defendant; that his assailant wore a shirt like that worn by defendant on the preliminary trial, two days afterwards. It was also in evidence that the tracks made by the assailant corresponded with the shoes worn by defendant: *Held*, that the evidence of the identity of the defendant was sufficient to be submitted to the jury and warrant a verdict of guilty.

This was an INDICTMENT for a secret assault (drawn under chapter 32, Laws of 1887), tried at the Fall Term, 1891, of the Superior Court of PITT County, before *Connor, J.*

The prosecutor testified, among other things, that the defendant lived near to him in the same township, in Pitt County; was known to him and had traded at his store, and that on the 26th of May previous he was going from his home to his store, about 7:30 P. M., when some one, who was standing behind a fence, fired a gun loaded with B. B. and buckshot, one of the shot striking witness, others passing through

his clothes and still others lodging in the trees near by the witness. The person did not move till the witness enquired who it was, and then he ran off. The witness stated that he recognized a dark-checked shirt which the person was wearing; that he saw a colored boy of about the size and height of the defendant and clean shaven, and that on the second morning afterwards, when the defendant was brought to trial, he was wearing a dark-checked shirt, exactly like the one worn by the person who shot him, and that the gun used was a single-barreled musket.

As soon as the Justice of the Peace, Mr. Laughinghouse, could be found on the next day, the prosecutor procured a warrant for the arrest of defendant, and then examined the track and found it was made by a number seven shoe that had been run down. The shoe worn by the defendant at the trial was run down.

On cross-examination the prosecutor stated that he could have seen a man one hundred yards away when he was shot; *that the defendant was about six steps from him when the shot was fired,* and he could see *at that place fifty yards, and he saw the defendant as he started to run.* The witness testified also that a shoe exhibited to him on the trial was the one he saw next day.

Mr. Laughinghouse, the Justice of the Peace, testified that he asked the prosecutor the next day why he thought that the defendant shot him, and prosecutor replied that he knew it by his size and the color of his shirt, which the prosecutor described to him. The witness also testified that he placed the shoe given him by the officer in one of the tracks near the alleged place of shooting and it fitted the track exactly, and he afterwards tried it on defendant's foot and it was of the same size that he wore.

Mr. Holliday testified that the track where the person appeared to be standing was eleven inches long, where he was running eleven and one-fourth inches long (it being in

evidence that defendant wore a number seven shoe and that the length of that number was eleven inches). That witness further testified that the defendant was working in a field where he could see him, on the day before the shooting, and left the field a considerable time before the usual hour of quitting work.

The witness stated that he recognized the shoe exhibited at the trial as the one worn by the defendant the day before the shooting. The shoe which the defendant used in chopping cotton was run down. The shoe shown on the trial was cut across the toe (the prosecutor having testified that the cut across the toe appeared at the trial to be fresh). A diagram showing the positions of the prosecutor and the person who shot him, the roads, location of tracks examined and of the store and home of the prosecutor and the home of defendant.

The defendant's counsel offered no testimony, and asked the Court to instruct the jury that the evidence makes, at best, nothing more than a weak probability of defendant's identity as the person who committed the assault. To the refusal so to charge, defendant excepted. Verdict of guilty. Defendant appealed.

*The Attorney General,* for the State.
No counsel for defendant.

AVERY, J.—after stating the facts: The defendant's request for instruction was equivalent to a demurrer to the strongest phase of the testimony which is presented in the foregoing summary, of those facts tending to establish his guilt. This evidence, together with other testimony tending to explain or contradict it, which it is not necessary to set forth here, should, unquestionably have been submitted to the jury to determine whether they entertained any reasonable doubt of the defendant's guilt. There is no exception to the terms of

the charge, which seems to have been conceived in a spirit of fairness, if not of liberality, towards the prisoner.

The testimony of the prosecutor, if not sufficient of itself to go to the jury on the question of identity, is strengthened by proof that the defendant's shoes, which had been run down, fitted in the tracks made by the person who committed the assault and also on the foot of defendant. Besides, one witness, Holliday, swore to the absolute identity of the shoes worn by the defendant on the afternoon just before the shooting, when he left the field at an unusual hour, and the shoes exhibited on the trial, and which the officer making the arrest testified that he found in the defendant's house. The prosecutor testified that the size, height, complexion and appearance of the man who shot were those of the defendant according to his best judgment, and that the shirt worn by the person who shot him at a distance of six steps, was, in his opinion, that worn by the defendant on the preliminary trial two days after, it being possible for the witness to see a man plainly fifty yards, looking from his standpoint, when shot, in the direction in which his assailant stood and subsequently ran. These facts, admitted by the request in the nature of a demurrer, were sufficiently strong to make it the duty of the Judge to submit them to the jury, and to warrant the verdict of guilty returned by them. The contradictory and explanatory testimony elicited from the witnesses was presented, or might have been presented, to the jury on the argument by counsel in their bearings upon the question of guilt. It was the province of the jury to weigh all of the evidence, which we assume they did.

A review of the testimony (which, as it is insisted, is insufficient to justify the verdict), and a comparison of it with that held to be sufficient to go to the jury in other cases, will show that testimony not so satisfactory has been held sufficient to sustain a verdict of guilty. *State* v. *Atkinson*, 93

N. C., 519; *State* v. *Powell,* 94 N. C., 965; *State* v. *McBryde,* 97 N. C., 393; *State* v. *Christmas,* 101 N. C., 749.

Placing the most liberal construction upon the evidence, the prosecutor testified to the positive identity of the shirt worn by the prisoner at the trial, two days after the shooting, with that worn by the person who shot him, and corroborated this opinion by the statement that his assailant was about the same height, size and complexion, and, like the prisoner, was clean shaven, and that he made the track subsequently examined by the witness with what appeared to be a run-down shoe. The identification of the shoe worn by him on the previous afternoon and fitting it in the track by other witnesses, form, together with the prosecutor's evidence, a network of circumstances so strong as to leave no room for question as to the correctness of his Honor's holding that there was testimony which it was his duty to submit to the jury.

We have not construed the language used by the prosecutor on his cross-examination according to its literal meaning, but have interpreted his whole statement together.

Stokes said, among other things, "I could see fifty yards at that place Defendant was about six steps from me when he shot. I saw him as he started to run." Taking this detached statement literally, and construing it without reference to the qualifying language used by the witness, it is an absolute assertion that he recognized the defendant when he started to run immediately after firing the gun. Whether the prosecutor claimed to have identified the defendant at that moment and gave the description of the dress, size and complexion solely for the purpose of corroborating his positive claim of recognition, or whether his opinion of the identity of his assailant and the accused was founded upon, instead of being justified by, the description he has given, in either view there was testimony which took the case beyond that pale within which the Court could discuss its weight.

*State* v. *Perkins,* 104 N. C., 710. The evidence was not clearly inconclusive as to the defendant's guilt, and it would have been error to have so held and to have withdrawn the case from the consideration of the jury. *State* v. *Dixon,* 104 N. C., 704.

Affirmed.