STATE v. BUD TILLMAN.

(Filed 18 March, 1908).

**Murder—Evidence—Question for Jury.**

 Evidence is insufficient, upon which to base a verdict of guilty against the defendant, which tended only to show that defendant, shortly before the time of the murder of the deceased, was seen with the other two defendants, and that he went with them in the direction of the place where the murder was committed, the defendant in front; one of the other defendants had an open knife under her apron and threatened to cut the deceased; witness left them and met deceased about five or six yards distant and going in their direction. No evidence of an eyewitness to the murder, but deceased was soon thereafter seen with a knife wound in his breast. Soon after the time fixed as that of the murder, and after it was known that deceased had been killed, defendant was seen, and was nervous and somewhat excited.

THE three defendants were indicted for the murder of one Jeff. Armstrong, and the cause was tried before *Long, J.,* and a jury, at December Term, 1907, of the Superior Court of JOHNSTON County.

At the conclusion of the testimony, the defendant Bud Tillman prayed the court to instruct the jury that there was not sufficient evidence upon which a verdict of guilty could be based as to him. The prayer was declined, and defendant excepted. There was a verdict of guilty of murder in the second degree as against all of the three defendants, with a recommendation of mercy in behalf of defendant Tillman. Judgment on the verdict, and defendant Bud Tillman again excepted and appealed.

*Assistant Attorney-General* for the State.
*Pou & Brooks* and *L. H. Allred* for defendant.

HOKE, J. The Court is of opinion that there is no sufficient evidence to justify a verdict of guilty against the defendant Bud Tillman, and that his prayer for instruction to that effect should have been given by the court. The declara-

tions and admissions of the defendant Lula Jones, made after
the homicide, having been properly restricted by the court to
the question of her own guilt or innocence, there is no conclu-
sive evidence that Bud Tillman was actually present at the
precise time of the occurrence, and none at all, as it seems to
us, that he took part in or in any way aided or encouraged the
murder.

There was evidence on the part of the State to the effect
that, on the night of 29 September, 1907, in the town of
Selma, Jeff. Armstrong was killed by being stabbed in the
breast with a knife. Tom Durham, witness for the State,
testified as follows: "Between Wall's and Burgess' store I
met the defendants; they were standing between the two
stores, near 9 P. M.; raining. Lou called me and asked me
to go home with her. I told her I didn't have time. She
caught my arm. I went as far as the railroad; I turned
back at railroad. I was on one side of Lou Jones and Hubert
Jones on the other; Tillman in front. She (Lou) had an
open knife under her apron. She said she was going to cut
'Dummy' (Bud Armstrong). I turned back, and went to
Vick's store and bought some socks; two blocks; then I went
to Wall's store, two blocks; got at Wall's store, I learned
that Bud Armstrong was dead. She had the knife in her
hand, under her apron, and open, when she said she was
going to cut Armstrong. The other defendants said nothing.
When I left them at railroad I met Armstrong and he was
five or six yards from defendants and going towards the rail-
road, and the defendants were at the railroad. Armstrong
was coming towards the defendants. It was up by railroad.
Lula said she would cut Armstrong. Lula had been drink-
ing. Deceased was deaf; couldn't hear anything at all; you
had to motion at him. Me and Jim O'Neal went to dead
body, lying in front of Liles' store. He was stabbed in right
breast. We went as soon as we heard he was killed, at Wall's
store." Cross-examination: "It was dark night. It is a

barlow knife; saw in light of Wall's store; it was open knife. It was raining hard. I didn't speak to Bud Armstrong; didn't tell him what Lula said. Hubert was with Lula when I left. I didn't tell Lula 'Here comes Bud Armstrong now'; he was coming; could be seen from the light of Wall's store. I didn't hear fuss after I went back to store. *Feme* defendant lives in house with my mother. Hubert Jones, a married man; Lula Jones, a married woman." Cross-examination by Tillman: "Don't know that Bud Tillman had anything to do with it." Re-direct: "When I turned to go back, I went fast. Light shone from the store and depot. Didn't see the cutting. All three standing together when I left them. Can't tell length of blade."

Tom Wiggins, for the State, testified that, on the night of the occurrence, about 9 or 9 :10 P. M., defendant Lula Jones came to his house, knocked at his door and came in; that her clothes were torn in front; she had stepped through them and they were dragging behind her. She said: "Mr. Tom, please don't give me away. I stabbed a man down the street, and I expect he is dead. Won't you go and see?" The witness testified to further statements of this defendant, Lula Jones, but to no further statements which were relevant or competent against defendant Bud Tillman.

N. R. Batten, a witness for the State, testified that defendant Bud Tillman had a talk with witness after the homicide; that witness made no threats or promises to induce any statements, and that defendant Tillman told witness that "Hubert Jones gave Lula Jones the knife and she stabbed the deceased."

J. L. Gurley testified as follows: "Know Hubert Jones; he worked for me. Remember time of killing. Saw him often during day. Hubert Jones owned a knife, a long barlow; Jones owned one something like the knife exhibited in evidence."

D. B. Perkins: "I am foreman Virginia-Carolina Chemical Department. Jones worked for us; saw him day of homicide. About week before homicide I saw Hubert Jones have a long barlow knife, something on order of the knife exhibited in evidence."

F. M. Cawthorne: "Live in Selma. Know defendant Jones; saw him with large barlow knife; I sharpened it once for him; it was a long barlow, on order of the knife in evidence."

W. A. Edgerton: "Know Bud Tillman. I was in Selma, in my store, on night of homicide. Saw him all that day; he worked for us. A few minutes after I heard of homicide (about 9 P. M.), I saw Bud Tillman; he came in store for settlement. I heard that Bud Tillman had got killed. I remarked to him I heard he was killed. I said to him I was a little bit elated; thought if he had been killed I would have saved $5 from his work. Tillman made no reply; he appeared nervous; he was nervous; he looked excited, somewhat. He immediately went to the office and got his money and left."

J. W. Liles: "Do business in Selma. Width of street, about 120 feet from sidewalk to Liles' store to the center of Main Street; Smithfield Street crosses there, crossing to Smithfield; leaves warehouse to left. Miranda lives about 120 feet from middle of railroad. I had just come back from barber shop. I saw some one dash under shelter; then in comes the deceased at door and asked me to 'phone for Dr. Person; he had his shirt wide open, and the blood was gushing out at a cut place. I hollered at him to get back (I didn't know he was deaf). As I walked to 'phone, he dropped back, face foremost, throwing wound about the door sill. I 'phoned for Dr. Person. He died. I saw the wound; it looked like a knife had gone into him. Doctor come and said he was cut; he ran his finger all round in wound. The man died in eight minutes."

This presents the entire testimony which in any way tends to establish the guilt of the defendant Bud Tillman, and in no correct view of it, as the matter now appears, would it justify a verdict of guilty against him. *State v. Goodson*, 107 N. C., 798. On the testimony, as disclosed in the record, the prayer of the prisoner should have been given, and for the error in refusing it the prisoner is entitled to a new trial.

New Trial.