### STATE *v.* GUS GRAHAM.

A prisoner under arrest for stealing growing corn from a certain field, may be compelled by the officer having him in charge, to put his boot or shoe in a track found in the field, for the purpose of comparison; and the result of that comparison is admissible evidence on the trial of the prisoner for the offence.

·(*State* v. *Jacobs*, 5 Jones 257, cited and approved.)

INDICTMENT for *larceny*, tried before *Buxton, J.*, and a jury, at Fall Term, 1875, of ANSON Superior Court.

The defendant was charged with the larceny of a growing crop.

It was in evidence that in the latter part of the week before Fall Term, 1875, of Anson Superior Court, the prosecutor, Lewis Ricketts, missed a quantity of corn from his field, having been pulled from the stalks while standing. The defendant was in the employment of the prosecutor. Fresh tracks, apparently of a single person, were discovered in the field, leading from stalk to stalk, where the corn was missing. There was a fence between that portion of the prosecutor's premises where the defendant lived, and the place where the corn was missing. The tracks both going and coming lead to this fence. On Monday of said term the defendant was arrested and the officer found under his bed about one and a half bushels of corn, apparently new corn. The officer carried the defendant to the prosecutor's field where the tracks were discovered.

The State offered to prove by the officer that he compelled the defendant to put his foot in the track and that it corresponded therewith.

To this evidence, the counsel for the defendant objected, because the prisoner was then under arrest and ought not to have been compelled to do anything calculated to criminate himself, the proposed evidence, partaking of the nature of a forced confession, ought to be excluded.

The objection was overruled and the defendant excepted.

There was a verdict of guilty and judgment accordingly. The defendant appealed.

*Busbee & Busbee*, for defendant.
*Attorney General Hargrove*, for the State.

RODMAN, J.  The first exception is, because the Judge permitted the officer who had the prisoner in custody to testify, that he made the prisoner put his foot in the tracks found in the prosecutor's field, and that his foot fitted the tracks perfectly.  It is argued that making the prisoner put his foot in the track was procuring evidence by duress, and the case of *State* v. *Jacobs*, 5 Jones, 259, is cited.

The object of all evidence is to elicit the truth.  Confessions which are not voluntary, but are made either under the fear of punishment if they are not made, or in the hope of escaping punishment if they are made, are not received as evidence, because experience shows that they are liable to be influenced by those motives, and cannot be relied on as guides to the truth.  But this objection will not apply to evidence of the sort before us.  No fears or hopes of the prisoner could produce the resemblance of his tract to that found in the corn field.  This resemblance was a fact calculated to aid the jury and fit for their consideration.

Evidence of this sort is called by the civilians "real evidence," is always admissible and is of greater or less value according to the circumstances.  In Best on Evidence, sec. 183, the following instances of its value are given.  "In a case of burglary, where the thief gained admittance into the house by opening the window with a pen knife, which was broken in the attempt, and a part of the blade left sticking in the window frame, a broken knife, the fragment of which corresponded with that in the frame, was found in the pocket of the prisoner. So where a man was found killed by a pistol,

the wadding in the wound consisted of a part of a printed paper, the corresponding part of which was found in the pocket of the prisoner. In another case of murder, a patch on one knee of the prisoner's breeches corresponded with an impression found on the soil, close to the place where the murdered body lay. In a case of robbery, the prosecutor when attacked struck the robber on the face with a key, and a mark of a key with corresponding wards was visible on the face of the prisoner," &c. Similar instances might be cited indefinitely. The exception however is that the officer made the prisoner put his foot in the track in order to test the resemblance. It has been seen that this could not alter the fact of the resemblance, which is the only matter that would have weight as evidence. It has been often held, that if a person under duress confesses to having stolen goods and deposited them in a certain place, although his confession of the theft will be rejected, yet evidence that he stated where the goods were, will be received, provided the goods were found at the place described. *Reg.* v. *Gould*, 9 C. & P. 364 ; *Duffy* v. *People*, 25 N. Y. 588 ; *White* v. *State*, 3 Heisk. 338 ; *Selidge* v. *State*, 30 Tex. 60.

The facts of the goods being found in the place described, proves that he knew they were there, and this knowledge is a fact bearing on the question of his guilt, to which the jury is entitled. An officer who arrests a prisoner has a right to take any property which he has about him, which is connected with the crime charged, or which may be required as evidence. Roscoe Cr. Ev. 211 ; *R.* v. *O'Donnell*, 7 C. & B. 138 (32 E. C. L. R.) ; *R.* v. *Kinsey*, Id. 447 , *R.* v. *Burgess*, Id. 488 ; *R.* v. *Rooney*, Id. 515.

If an officer who arrests one charged with an offence, had no right to make the prisoner show the contents of his pocket, how could the broken knife, or the fragment of paper corresponding with the wadding, have been found ? If when a prisoner is arrested for passing counterfeit money, the con-

tents of his pockets are sacred from search, how can it ever appear whether or not he has on his person, a large number of similar bills, which if proved is certainly evidence of the *scienter*? If an officer sees a pistol projecting from the pocket of a prisoner arrested for a fresh murder, may he not take out the pistol against the prisoner's consent, to see whether it appears to have been recently discharged? Suppose it be a question as to the identity of the prisoner, whether a person whom a witness says he saw commit a murder, and the prisoner appears in court with a veil or a mask over his face : May not the court order its removal in order that the witness may say whether or not he was the person whom he saw commit the crime ?

Would the robber whose face was marked with the wards of a key have been allowed to conceal his identity by wearing a mask during his trial ?

We conceive that these questions admit of but one answer, and that is one consistent with the general practice.

We concur with the Judge below, that the officer had a right to take off the boots or shoes of the prisoner and compare them with the tracks in the corn field. And we also agree with him in the opinion that when the prisoner, upon being required by the officer to put his foot in the tract, did so, the officer might properly testify as to the result of the comparison thus made. It is unnecessary to say whether or not the officer might have compelled the prisoner to put his foot in the tracks if he had persisted in refusing to do so. The refusal and the result of the comparison made by the officer between the track and the prisoner's shoe would have been competent.

There is no error. Judgment affirmed. Let this opinion be certified.

PER CURIAM.                              Judgment affirmed.