J. M. WORTH, Trasurer, v. JOHN H. COX and others.

*Motion in the Cause—Sheriff, summary judgment against—Surety and Principal—Forbearance—Legislative Power over collection of Revenue.*

1. A motion in the cause is the proper remedy to impeach a summary judgment rendered in pursuance of the revenue act, by the clerk of Wake superior court, upon the bond of a delinquent sheriff.

2. The act of assembly authorizing the summary method of obtaining judgment against a sheriff who is delinquent in settling state taxes, is constitutional, and the settled law of this State.

3. A legislative extension of the time within which a sheriff may settle state taxes, does not exonerate the sureties upon his bond.

4. The collection of the revenues is under the controlling power of the legislature, and sheriffs and their bondsmen are affected with notice thereof

and subject to its exercise. It enters into and becomes a part of their contract with the state, and is as binding as any express condition of the bond.

(*Prairie* v. *Worth*, 78 N. C., 169; *Oates* v. *Darden*, 1 Mur., 500; *Prairie* v. *Jenkins*, 75 N. C., 545, cited and approved).

PROCEEDING in summary judgment against a sheriff for failure to pay state tax in the time allowed by law, commenced before the clerk, and heard at June Term, 1883, of WAKE Superior Court, before *Philips, J.*

On motion before the clerk of the superior court of Wake, judgment was rendered against the defendant sheriff of Perquimans county, and the sureties upon his bond, under the provisions of the revenue act, for failure to pay taxes according to law. An appeal therefrom was refused by the clerk, and the defendant sureties then applied to the judge for the writ of *certiorari*, alleging, in substance, that they had no notice of the time when the motion for judgment would be made; that the acts of assembly (referred to in the opinion of this court) extended the time for the sheriff, their principal, to settle the taxes, and that the indulgence was given without their consent or privity. The petitioners insist that they are therefore released from all liability as sureties; that they were entitled to notice of said motion, and to the right of appeal from the judgment rendered by the clerk. Thereupon the judge granted the *certiorari;* notice of the proceeding was served on the plaintiff state treasurer, and on the hearing the attorney-general filed the following demurrer to the petition of the defendants, to-wit:

The plaintiff, waiving any irregularity that may exist in the mode of procedure resorted to by the defendants, and wishing to have the matter determined upon its merits, demurs to the petition of the defendants, and says that the facts set forth do not constitute a cause of action, assigning as grounds therefor:

1. That the defendant sheriff and sureties are liable to the judgment rendered against them, without other notice than that given by the auditor to the plaintiff treasurer of the failure of

the sheriff to settle his account for taxes within the time required by law; and this notice was given in accordance with the express provisions of the machinery act.

2. The legislature imposes the burden of taxation and controls the machinery for the collection of the revenues, and can legally indulge or suspend the collection of the same, and the defendant sheriff and sureties, in accepting the office and executing the public official bond upon which said judgment is rendered, are thereby affected with notice of this legislative power, are subject to its exercise, the same being, in law, a part of their said contract with the state, and therefore binding as well upon the sureties as the principal.

Wherefore the plaintiff says that the said sureties are not released from their said obligation by reason of the legislative extension of the time within which their principal was required to settle his account for taxes, and prays that the petition be dismissed at defendants' costs.

After argument of counsel, the demurrer was sustained by the court. Judgment that plaintiff recover costs: appeal by defendants.

*Attorney-General,* for the plaintiff.
*Messrs. Battle & Mordecai* and *J. W. Albertson,* for defendant.

SMITH, C. J. The defendant Cox, sheriff of the county of Perquimans, being in default in his settlement of public taxes, and the time allowed therefor having expired, summary judgment was entered before the clerk in the superior court against him and the other defendants, the sureties, upon their official bond for the sum due, under the provisions of section 44, chapter 117 of the acts of 1881. Pending the motion and before rendition of the judgment, counsel for the sureties, being notified thereof by the clerk, appeared before him and made objection on the ground that indulgence had been granted to their principal, and the time for settlement enlarged by two successive acts of

the general assembly, whereby they had been discharged from their liability. The objection was overruled, and judgment recovered for the penalty of the bond, to be discharged by payment of the sum in arrear, but without the penalties superadded for the delinquency.

The sureties thereupon proposed to appeal to the judge, as we suppose, though the record does not so state, and on being refused, applied by petition to him for a writ of *certiorari*. The defence therein set up to the action before the clerk is, that there being no previous notice to the defendants, the judgment was unauthorized and null; and secondly, that the effect of the acts granting indulgence to the sheriff and extending the time for payment of the taxes, was to release them from their obligation as his sureties.

The judge granted a rule on the treasurer to show cause at a designated day why the *certiorari* should not be ordered, to answer which the attorney-general appeared on the return day and insisted that the causes assigned in the petition for the writ were insufficient in law to warrant its issue. The application was on the hearing denied, and the defendants' appeal brings the matter up for determination.

The course of proceeding adopted to bring the matters of defence relied on before the judge for adjudication, involves a misconception of the character of the judgment and the proper mode of impeaching it. The judgment is rendered in the superior court and constitutes a part of its records, so that no certified transcript from the clerk was necessary in order to its being judicially taken notice of by the judge, and a simple motion after notice was all that was necessary to bring the matter before him, as is pointed out by BYNUM, J., in *Prairie* v. *Worth*, 78 N. C., 169. We notice this irregularity to avoid the inference of its receiving our sanction, and consider the application as a motion in the cause.

We proceed then to examine the validity of the defences set up on behalf of the sureties who appeal.

1. The regularity and efficacy of the summary judgment rendered without previous actual notice:

In looking into the legislation which introduced this summary process against public agents, we find that in 1793 an act was passed authorizing the attorney-general, on motion, to take judgment against receivers having public moneys in their hands and failing to pay over, and that their own delinquences should be sufficient notice of the motion therefor. The compatibility of the enactment with the constitution was brought in question, in an anonymous case reported in 1 Haywood, 29 (Battle's Ed., 38), the very next year, and elaborately argued before Judges WILLIAMS, ASHE and MACAY, by the attorney-general Haywood. The former, who first heard the motion, adhered to the opinion he then expressed, that the act was repugnant to the constitution; while the other judges granted the motion, Judge ASHE remarking "that while he had considerable doubts, Judge MACAY was so clear in his opinion that the judgment might be taken, and had given such strong reasons, that his own objections had been vanquished."

The same summary remedy, given against delinquent sheriffs to the counties by the act of 1808, came before the court in the case of *Oates* v. *Darden*, 1 Mur., 500, and HALL, J., delivering the opinion, sustains the policy of such legislation, and says that "it does not alter the rights of the sheriff," but only "the mode of proceeding against him, and that the legislature had the right to do this." Such acts, in his own words, "are beneficial, and should be liberally construed."

In this case the judgment was rendered after the sheriff had gone out of office.

A similar law to that under which the present proceeding was authorized, so far as we know, has been in uninterrupted force and acted on since the well considered conclusion, in the anonymous case first cited, was announced; nor does the consistency of this summary and efficient remedy against delinquent collections of public money, with the provisions of the organic law,

seem to have been drawn in question since, unless in *Prairie* v. *Jenkins*, 75 N. C., 545, wherein RODMAN, J., thus disposes of the two objections made for the appellant.

1. " The first ground on which the plaintiffs put their claim to relief is, that the judgment was taken before the clerk of the superior court and not before the judge in term time. This objection to the judgment is answered by the act of 1872–'73 (Bat. Rev., ch. 102, §38), which expressly directs the proceeding complained of.

2. That the judgment was taken without notice to them. This also is directed by the act cited."

This summary mode of enforcing the collection of taxes may be necessary in carrying on the operations of government, which would be often seriously interfered with if the state were forced to pursue the ordinary action upon the bond and subject its recovery to the delays incident thereto, and with an unlimited right of appeal on the part of the delinquent and his sureties. The office is accepted and the bond given under the known conditions of the law that permits this direct and expeditious remedy in case of default, and these may be said to enter as elements into the contract itself.

But it is enough to say that if any law can be deemed settled and not longer to admit of controversy, the practice under this, or a similar enactment for near a century past, has established its validity.

It is suggested in argument for the appellants that the present constitution, essentially different from its predecessor, delegates to the general assembly all the power it possesses, and is not a mere limitation upon general legislative power, and hence there is no warrant for the enactment.

We do not see any material difference between them, in this respect, in their declaration of personal rights and immunities, which the act may be supposed to invade; and as it is a part of the machinery provided for the collection of public taxes and

4

their payment into the treasury, the act, as incident thereto, is necessarily involved in the power to levy and collect taxes for the support of the government.

2. We are now to examine into the effect of the statutory indulgence upon the obligation of the sureties.

The act of 1879, ch. 168, after a recital of the robbery of the sheriff of a specified sum collected from taxes, proceeds to declare:

"That John H. Cox, sheriff of Perquimans county, be allowed until the 1st day of February, 1881, to pay the treasurer the said sum of $1,642; and he and his sureties on his official bond shall be relieved until the expiration of the term hereby allowed, of all penalties, forfeitures and liabilities, by reason of not paying over to the treasurer the said sum of which said sheriff was robbed."

The other act simply extends the indulgence for a period of two years longer. Acts 1881, ch. 225.

It will be observed that the relief is extended not alone to the sheriff, but equally to his sureties; nor does it seem to impair any equities which, growing out of their relations, they may have against him.

It is true there are some adjudications which hold the sureties to be exonerated by giving time to the principal, as in the present case, some of which were referred to in argument, and others are cited in the note to section 324, in Brant on Suretyship; other adjudications are referred to by the same author. We think the latter better supported on reason, and, instead of comments of our own, quote from that section: "Laws that require that settlements shall be made at stated times are merely *directory* to the officers of the government, and form no part of the contract with the sureties, and the change of such laws in no way affects the right of the sureties." Besides, using the language of the judge in *Commonwealth* v. *Holmes*, 25 Grattan (Va.), 771, "the indulgence granted to the officer by the extension of time in this case is not a contract, but is an ordinary act of leg-

islation for the public good, with no consideration for the extension moving from the officer, and is repealable at the will of the general assembly."

But while some intimation of approval of the contrary rulings is given in the opinion in *Prairie* v. *Jenkins,* the point is presented and a distinct exposition of the law announced in the later case of *Prairie* v. *Worth,* wherein BYNUM, J., thus expresses the views of the court:

"The collection of public taxes must be conducted under the continuous supervision and control of the legislative department of the government. The laws, affecting the assessment and collection of the public revenues, must be from time to time made more or less rigorous in their enforcement, or otherwise modified to conform to the existing condition of the country, the depression of trade, the failure of crops, the scarcity of money and other causes, often delicate and complex, affecting the sensitive subject of taxation. * * * Every collecting officer therefore accepts and gives bond, affected with notice and subject to the exercise of this right of sovereignty. It enters into and becomes a part of the contract with the state, and is as binding on the bondsmen as any express condition of the bond, subject to the power of the legislature to control its duties as the public good might require."

This reasoning, clear and logical, commends itself to our approval, aside from its force as an adjudication of the court.

We are unable to see the force of the argument, which deduces from a mere forbearance to enforce penalties against a delinquent and his sureties, and the giving him time to replace public moneys, of which he has been robbed, the exoneration of the surety obligors from all further liability to make payment.

There is no error, and the judgmet must be affirmed.

No error.                                    Affirmed.