(127 App. Div. 510.)

PEOPLE v. SCHLESSEL.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. FRAUDULENT CONVEYANCES—CRIMINAL RESPONSIBILITY—OFFENSES—INDICTMENT—SUFFICIENCY.
An indictment charging that accused "committed the crime of removing property with intent to defraud a creditor, committed as follows," that accused, being indebted to a person named and to divers other persons in divers sums, with intent to defraud said persons and others, being his creditors, and to prevent the property thereinafter described from being made liable for the payment of his debts or levied on by execution or warrant of attachment, unlawfully did remove, assign, and convey to a person named a certain bank check described, etc., charges but a single crime, in violation of Pen. Code, § 587, punishing a person, who, with intent to defraud a creditor, or to prevent any of his property being made liable for the payment of any of his debts, or levied upon by an execution or warrant of attachment, removes any of his property, or secretes, assigns, conveys, or otherwise disposes of the same.

2. SAME.
To show a violation of Pen. Code, § 587, providing that a person who, with intent to defraud a creditor, or to prevent any of his property being made liable for the payment of any of his debts, or levied upon by execution or writ of attachment, removes any of his property, or secretes, assigns, conveys, or otherwise disposes of the same, shall be guilty of a misdemeanor, it is not essential to show that there was any creditor who could have levied on the property by virtue of a warrant of attachment or an execution issued on a judgment, and a debtor cannot fraudulently dispose of his property before the indebtedness is due.

3. INDICTMENT AND INFORMATION—DUPLICITY—JOINDER OF OFFENSES—ALTERNATIVE ACTS CONSTITUTING OFFENSE.
Where a crime may be committed by the doing of several acts in the alternative, they may all be included in one count, and a conviction had on proof of the commission of any one, without proof of the commission of the others.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 351.]

4. SAME.
The bare fact that an indictment in one count describes more than one crime does not make it defective, provided that the accused is charged with the commission of only one crime.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 335, 337–371.]

5. SAME.

An indictment must name the crime, and then state the acts constituting it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 180.]

6. CRIMINAL LAW—EVIDENCE—SECONDARY EVIDENCE.

Where an original statement, competent as evidence, was lost, so that it could not be produced, secondary evidence of its contents was admissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 887, 888.]

7. FRAUDULENT CONVEYANCES — CRIMINAL PROSECUTIONS — EVIDENCE—ADMISSIBILITY.

Where, on a trial of a debtor for fraudulently removing his property with intent to defraud his creditors, the prosecution produced as a witness the receiver in bankruptcy of accused, who testified as to the property which he turned over to the trustee in the bankruptcy proceeding, and his counsel, on cross-examination, sought to show that accused had more property than the receiver turned over, and that a sale of certain property made by the receiver to a third person was fraudulent and collusive and set aside by the court on petition of the trustee, and asked whether the petition did not contain certain statements, it was not error to receive in evidence the petition and order setting aside the receiver's sale, especially where no suggestion was made as to the part to be admitted, and where the court, at the time the same was received in evidence, instructed the jury that they were to consider such evidence only as bearing on the property which passed in the bankruptcy proceeding to the receiver and the bona fides of the sale.

8. SAME—SUFFICIENCY.

Evidence *held* to justify a conviction for a violation of Pen. Code, § 587, punishing a person who, with intent to defraud a creditor, removes any of his property, etc.

9. SAME.

On the trial of a debtor for removing and conveying a check with intent to defraud creditors, the transfer of the check being part of a general scheme for that purpose, it was proper and necessary to prove accused's general purpose.

Appeal from Court of Special Sessions.

Nathan Schlessel was convicted of crime, and he appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

John R. Dos Passos, for appellant.
Robert C. Taylor, for respondent.

McLAUGHLIN, J.   The statute (section 587, Pen. Code) provides that a person who, with intent to defraud a creditor or to prevent any of his property being made liable for the payment of any of his debts or levied upon by an execution or warrant of attachment, removes any of his property, or secretes, assigns, conveys, or otherwise disposes of the same, is guilty of a misdemeanor.   The defendant was indicted, tried, and convicted of violating this statute, for which he was sentenced to the penitentiary for the term of one year.   He appeals from the judgment of conviction, and, in connection with such appeal, brings

up for review the denial of certain motions—to set aside the indictment, for a new trial, and in arrest of judgment.

It is contended on the part of the defendant that the indictment upon which the conviction was obtained is fatally defective; that there is no such crime as "removing property with intent to defraud a creditor"; that the section of the Penal Code referred to specifies three distinct crimes, and that the acts constituting each of such crimes cannot be set forth in an indictment as constituting one crime—that is, that the indictment is bad because it sets forth in the one count several crimes in violation of section 278 of the Code of Criminal Procedure. The indictment charges that the defendant committed "the crime of removing property with intent to defraud a creditor, committed as follows:" That on the 19th of November, 1903, the defendant "being then and there indebted to" certain copartners, William Openhym & Sons, "and to divers other persons * * * in divers sums of money, with intent to defraud the said copartners and the said other persons * * * then being his creditors, and to prevent the property hereinafter described from being made liable for the payment of his debts or levied upon by an execution or warrant of attachment, unlawfully did remove, assign, and convey to one Max Schlessel" a certain bank check, copy of which is set forth, for $1,972.45, dated November 19, 1903, payable to his order and signed by C. Rosenberg. In my opinion the indictment charges but a single crime, the facts of which are concisely set forth, and which constitutes a misdemeanor under the section of the Penal Code referred to. It was not necessary either to allege or prove that there was any creditor who could have levied upon the property by virtue of a warrant of attachment or an execution issued upon a judgment. It would be a forced and strained construction, and, in effect, destroy the very purpose sought to be accomplished by this statute, to hold that a debtor might fraudulently dispose of all his property the day before claims fell due and go scot free simply because the creditor, at the time of the fraudulent act, could not have levied upon the property either by execution or attachment. The rule seems to be settled that, where a crime may be committed by the doing of several acts in the alternative, they may all be included in the one count and a conviction had on proof of the commission of any one, without proof of the commission of the others. People v. Herlihy, 66 App. Div. 534, 73 N. Y. Supp. 236, affirmed 170 N. Y. 584, 63 N. E. 1120. The bare fact that an indictment in one count describes more than one crime does not make it defective, provided the defendant is charged with the commission of only one crime. People v. Klipfel, 160 N. Y. 371, 54 N. E. 788. An indictment must name the crime, and then state the acts constituting it. People v. Dumar, 106 N. Y. 502, 13 N. E. 325. This is not only for the purpose of enabling the defendant to prepare his defense, but also to prevent his being again indicted and tried for the same offense. This indictment answers the purpose. It names the crime and sets out the facts constituting it.

It is also urged that the people failed to prove that the defendant committed the crime charged in the indictment. The evidence is overwhelming that the defendant was engaged in a fraudulent scheme to

·put his property beyond the reach of creditors, and then be relieved from his debts by a discharge in bankruptcy. At various times during the year 1903, he gave out a statement showing that he was worth ·over all debts and liabilities upwards of $90,000. This statement he made to the witness Ronald, the credit man of Openhym & Sons, on November 19, 1903, the very day that he transferred to his brother, Max Schlessel, the check in question. Evidence was. given by the ·witnesses Blasbalg, Lesser, and others as to his plans and the way the .scheme was worked, and that it was successful is shown by the fact that when he went into bankruptcy on the 1st of December following he was hopelessly insolvent, owing upwards of $130,000.

Nor is there force in the contention that the people failed to prove that the defendant at the time in question was indebted to Openhym & Sons. The evidence satisfactorily shows that at the time he transferred the check in question he owed such firm several thousand dollars, though it does not clearly appear whether the indebtedness was then due. But so long as the indebtedness existed, whether it was then due or not is of no importance. As to this check, it appeared that in the preceding January the defendant entered into an agreement with one Rosenberg, by which the latter advanced to the defendant, on accounts received up to October 8th, some $48,500 which the defend-ant repaid. Between November 17 and December 1, 1903, the defendant became somewhat more active, and obtained from Rosenberg some $36,000 under a new arrangement. He had formerly done a banking business under the name of Schlessel & Co., which prior to his failure he transferred to his brother Max. It would seem that this transfer was fraudulent; but, if so, it is of no importance so far as the question now presented is concerned, except as possibly bearing upon the point that at the time the check referred to in the indictment was ·delivered to Max defendant was not indebted to him. Upon the question of the indebtedness to Max, the evidence is amply sufficient to ·sustain a finding that he did not at this time owe him anything. On November 9, 1903, Max opened an account in the German Exchange Bank and checks received from November 18 to December 1, 1903, from Rosenberg were indorsed by the defendant, given to Max, and by him deposited to the credit of this account. Among the checks thus deposited was the one in question. Defendant claims that, so far as this check was concerned, the transaction was perfectly legiti-·mate, since it appeared that on the same day Max gave back to the defendant a check for $3,500, which he, in turn, paid to Rosenberg. Defendant's bookkeeper testified this was ‚what was called an "ex-·change check," but a careful examination of her testimony, especially that given on cross-examination, shows that very little, if any, reli-:ance can be placed upon it. But, if it be assumed that these checks were both given on the same day, it does not follow by any means that the transfer was not fraudulent. On the contrary, taken in connec-·tion with the other evidence, if the jury believed it, it would justify a conclusion that it was a part of the fraudulent scheme. Max had received .from the defendant sums largely in excess of the $3,500 · ·check. Indeed, on the day before he had received $3,900. Nor is the ·force of this evidence destroyed by the testimony of Lesser that the

defendant told him that the checks to his brother were to pay off the small depositors in the bank.

It is further claimed that the court erred in admitting the testimony of the witnesses Ronald, the credit man of Openhym & Sons, Appleton, the president of the Fourteenth Street Bank, and Albertsch, the agent of Iselin & Co., as to statements made by the defendant to them, respectively, and especially in admitting a copy of the statement given to Appleton. I think this testimony was properly received, as well as copy of the statement. The original had been lost, and could not be produced, and for that reason secondary evidence was admissible. These statements were competent, as bearing upon the intent of the defendant.

Finally, it is claimed that error was committed in receiving in evidence the petition and order setting aside the receiver's sale. In this connection, it appeared that the people produced as a witness the receiver in bankruptcy, who testified as to the property which he turned over to the trustee in the bankruptcy proceeding. The defendant's counsel, on cross-examination, sought to show that the defendant had, in fact, more property than the receiver turned over; that a sale of certain property made by the receiver to one Nathan was fraudulent and collusive; and for that reason was set aside by the court upon the petition of the trustee. He was asked if the petition did not contain certain statements. Thereafter the people were permitted to introduce the petition and order. While it is true the petition contains irrelevant matters, yet after the cross-examination I am of the opinion that the people had the right to introduce the same in evidence. No suggestion was made as to the part to be admitted, and the court, at the time the same was received in evidence, carefully instructed the jury that they were to consider such evidence only as bearing upon the value of the property which passed in the bankruptcy proceeding to the receiver and the bona fides of the sale. I do not think it can be said that the admission of this evidence constituted reversible error.

Other errors are alleged, but they do not seem to be of sufficient importance to be here considered.

An examination of the facts set out in the record cannot fail to convince one that the defendant is guilty of the crime charged in the indictment; that transaction was a part of his general scheme to put his property beyond the reach of creditors, and then be relieved from the payment of his debts by a fraudulent proceeding in bankruptcy. He obtained upon credit within a short time upwards of $100,000 worth of property, which he so disposed of or secreted, that, when he went into bankruptcy, his creditors could not reach or find it. The transfer of the check in question was but a part of his general scheme, and, to prove his fraudulent intent in disposing of it, it was not only proper, but became necessary, to prove his general purpose. He had a fair trial; the evidence sustains the finding of the jury. He was justly convicted, and there are no errors which call for reversal.

The judgment of conviction and order appealed from are therefore affirmed. All concur.