The prisoners were convicted of the murder, in the first degree, of Grant Davis on Sunday afternoon, 7 March, 1915. There was evidence that the deceased shortly before the homicide had received money for his cotton crop, part of it in new bills of the King's Mountain Bank; that the prisoners had been at his house shortly before the day of the murder, and that on the afternoon of the homicide the deceased, with $300 on his person, left his house with one John Adams; that John Adams, as was testified by him and others, parted from the deceased before the prisoners met him, and he was seen no more alive; his body being discovered on Wednesday concealed in a brush pile, to which it had been dragged, with his head badly beaten in. There was no money on the body when found, except 15 cents. There were two tracks besides those of the deceased going to the place of homicide, which tracks were identified as those of the prisoners. The prisoners confessed that the tracks were made by them, and that he was killed by one (732) of them with a stick, the other holding the deceased. They told where they had cut the stick and where they had hidden it behind a log, and in consequence of this information the officers found and brought into court the stump from which the stick had been cut, and also found the stick where they said that it was hidden, with human blood on it. The prisoners on the night of the next day (Monday) took the train and were seen in the possession of considerable money when they bought their tickets, though their employers testified that they had no money, but had borrowed a small sum the day before from them. It was also in evidence that the prisoners had each given $10 apiece in new bills to their wives, which was found in the possession of the wives. The prisoners were pursued and found at Armour, Ga., and made confessions, which, however, the judge ruled out, as there was evidence that threats of lynching had been made, to the knowledge of the prisoners. But the court permitted the officers to testify that in consequence of what was said they found $60 *Page 822 
hidden under a mattress in a house, which consisted of new bills of the Bank of King's Mountain, and they also found other money on the persons of the prisoners, who each had bought a watch and new clothes. On the way back, at Atlanta, Ga., and at Spartanburg, there were some threats made by bystanders. After the prisoners were lodged in the Gaston County jail they confessed to the murder and attendant circumstances to an officer, without any threats or inducements on his part, and they also made confessions as to the tracks and stick, cutting and hiding the stick with which the murder was committed and the commission of the murder, to a fortune-teller who was in jail with them, which coincided, as above stated, with the facts on investigation; and there was testimony of another prisoner in jail to confessions by both these prisoners.
The judge instructed the jury, as to these confessions, that they were only competent against the person making them, the other not being present at the time. Both prisoners made confessions which were held competent only against the party making it. But there were also confessions made when both prisoners were present, and these were admitted. There was in evidence confessions to John Adams before the prisoners left for Georgia.
The prisoners did not testify in their own behalf and did not introduce any evidence. The prisoners contended, first, that the finding of the money in consequence of the confessions at Armour, Ga., which confessions were ruled out on account of threats by bystanders, rendered incompetent the evidence of the officers that they found the money hidden in the house; and they made the same objection as to the evidence that in consequence of the confessions in the jail at Gastonia the (733) officers followed the tracks and found the bloody stick and the stump from which it had been cut.
Aside from the fact that the latter confessions were voluntary, it has been held uniformly in this Court that though confessions made in consequence of threats or inducements must be excluded, this does not render incompetent the discovery of incriminating evidence in consequence of such confessions.
"Where an involuntary confession discloses incriminating evidence which is subsequently on investigation proved to be true, or where the confession leads to the discovery of facts which in themselves are incriminating, so much of the confession as discloses the incriminating evidence and relates directly thereto is admissible. And the facts discovered in consequence of such involuntary confession may be proved." 12 Cyc., 478. In S. v. Graham,74 N.C. 646, where the prisoner had been compelled by the officer to put his foot in the tracks, it was held competent to prove that his foot fitted the tracks perfectly, the Court *Page 823 
saying: "The object of all evidence is to elicit the truth. Confessions which are not voluntary, but are made either under the fear of punishment if they are not made, or in the hope of escaping punishment if they are made, are not received as evidence, because experience shows that they are liable to be influenced by these motives, and cannot be relied on as guides to the truth. But this objection will not apply to evidence of the sort before us. No fears or hopes of the prisoner could produce the resemblance of his track to that found in the cornfield. This resemblance was a fact calculated to aid the jury, and fit for their consideration. Evidence of this sort is called by the civilians `real evidence,' is always admissible, and is of greater or less value according to the circumstances." This has always been held in this State, and indeed everywhere.
S. v. Graham, supra, has been often cited and approved, among other cases, in S. v. Lindsey, 78 N.C. 501, where it was held that though a confession might be excluded on account of duress, it was competent to show that in consequence of what the defendant said the officer found the stolen property at the point mentioned, as finding the money under the mattress in this case.
In S. v. Winston, 116 N.C. 992, it was held that "this doctrine is well settled in this State." S. v. Graham was also quoted in S. v. Mallet,125 N.C. 725, which case on writ of error was approved by the United States Supreme Court in Mallett v. North Carolina, 181 U.S. 589, which cites S. v. Graham, supra, with approval. This United States decision is printed in 128 N.C. 619.
The same doctrine was stated in S. v. Moore, 2 N.C. 483; S. v.Garrett, 71 N.C. 85, and in many other cases, among them as recently asS. v. Thompson, 161 N.C. 241.
The prisoners also except to the declarations made to the officer (734) in the jail after the return of the prisoners because of the threats made down in Georgia. The Georgia confessions were ruled out. But the confessions in Gastonia were voluntary and competent, and there is nothing that refers them to fear caused by what happened in Georgia. Indeed, while in jail the prisoners made full confession to the fortuneteller and also to another prisoner.
The prisoners also except because after the court had made an order that no witness for the State or for the prisoners should be allowed in the courtroom during the trial, a witness for the State who remained in the courtroom was permitted to testify. The prisoners moved for a nonsuit on that ground, and also to set aside the verdict, and excepted to the denial of these motions. But it is a matter in the discretion of the court whether such witness shall be examined or not. 12 Cyc., 547. The same point was made in S. v. Hodge, 142 N.C. 676, and it was *Page 824 
held that this was a matter which rested in the discretion of the presiding judge. The same ruling was made in S. v. Sparrow, 7 N.C. 487, and Purnellv. Purnell, 89 N.C. 44, and is stated as settled law in the text-books, 1 Greenleaf Ev., secs. 431 and 432 and notes, and 2 Bishop New Criminal Proceedings (2 Ed.), secs. 1191 to 1193 a.
The confessions made to the officer at Gastonia, being voluntary, were not incompetent merely because the prisoners were in custody or in jail, and not even if they had been in handcuffs, which does not appear to have been the case here. S. v. Whitfield, 109 N.C. 876, citing several cases, and which has been cited since with approval in S. v. Edwards,126 N.C. 1052; S. v. Horner, 139 N.C. 606. To same effect, S. v. Smith,138 N.C. 700; S. v. Bohanon, ib., 695; S. v. Jones, 145 N.C. 466, and many others.
Evidence as to the identity of tracks was competent. S. v. Graham,74 N.C. 649; S. v. Reitz, 83 N.C. 636; S. v. Daniels, 134 N.C. 655; S. v.Hunter, 143 N.C. 610, and numerous citations to the last in the Anno. Ed., among others, S. v. English, 164 N.C. 506; S. v. Andrews, 166 N.C. 351. Here this evidence was corroborated by the confessions.
The prisoners moved to strike out the following evidence, which had been admitted without exception, by the officer Duncan: "I followed them to Georgia and caught them at Armour, Ga. In searching them I found a new $10 bill on Lowry and a new $10 bill on Poston, both of the King's Mountain Bank, and a $1 bill and a pocketbook on Poston, and after searching the house where they had been staying I found $60 more of new money." The court refused this motion, because, although evidence of the confessions had been excluded because there were threats of lynching, it was competent to show the above facts. The prisoners then moved to strike out the following evidence which had been elicited by a question from the court and to which there had been no (735) objection at the time: "This was at the house where they had hid it.
Here is some that was on them. These (other) are two old $10 bills that I found at John Best's."
This evidence having been admitted without objection, except as above stated, it was discretionary with the judge whether he would strike out the testimony on the new ground urged, after it had been admitted. S. v. Lane,166 N.C. 333; S. v. Efler, 85 N.C. 585. The prisoners' counsel in the oral argument here, though not in the brief, on the motion to strike out evidence, laid stress on the expression that the money had been found "at the house where they had hid it." If this had been objected to at the time the court would doubtless have stricken it out and the witness could have modified the testimony by saying that in consequence of what the prisoners had said he had found the money under the mattress at the house where "it had been hidden." Certainly it *Page 825 
cannot be deemed that the difference was of such vital importance that the modification of the answer would have changed the verdict in this case. Besides, the prisoner did not object to it on this ground in apt time.
Upon consideration of the whole case, we do not find that the prisoners have been prejudiced by the rulings of the court in any respect.
No error.
Cited: S. v. Merrick, 172 N.C. 872 (6f); Lee v. Thornton, 174 N.C. 289
(4f); S. v. Davis, 175 N.C. 727 (4f); S. v. Spencer, 176 N.C. 713 (5f);S. v. Newsome, 195 N.C. 557 (2f); S. v. McLeod, 198 N.C. 652 (5f); S. v.Moore, 210 N.C. 692 (2f); S. v. Mays, 225 N.C. 489 (5f); S. v. Walker,226 N.C. 461 (5f); S. v. Ragland, 227 N.C. 163 (5f).