IRVIN HERBERT GORE et al. v. STATE.

No. A-4595.   Opinion Filed Sept. 8, 1923.
Rehearing Denied Nov. 10, 1923.

(219 Pac. 153.)

(Syllabus.)

1. **Homicide—Information—Allegation as to Means—Proof.** An information charging murder by mortally wounding the deceased with firearms and burning his body will support a verdict of guilty upon proof that death was caused by one or the other, or both.

2. **Evidence—Evidence of Taking Shoes from Accused to Compare with Tracks near Homicide Admissible.** Evidence of the taking of the shoes from an accused person under arrest, charged with murder, for the purpose of ascertaining whether they correspond to the tracks found near the place of the homicide under the circumstances here, may be introduced by the state, over the objection of the accused that evidence so obtained is in violation of his constitutional right to immunity from being compelled to give incriminating evidence against himself.

3. **Evidence—Testimony of Witness at Preliminary Hearing—Predicate Sufficient.** There was a sufficient showing made that witnesses who had testified at the preliminary examination were out of the state at the time of the final trial; and the record of their testimony taken at the preliminary trial could be introduced as the deposition of such witnesses on final hearing.

4. **Witnesses—Interrogations of Accused as to Other Convictions.** In this state the accused may be interrogated concerning other convictions for crime. Whether an offense involves moral turpitude is not the test in this state.

5. **Trial—Homicide—Instruction as to Sufficiency of Circumstantial Evidence—Evidence Sustaining Conviction of Murder.** Instructions examined, and held sufficient.

The evidence analyzed, and found sufficient to support the verdict.

Appeal from District Court, Ellis County; T. P. Clay, Judge.

. Irvin Herbert Gore and another were convicted of murder, and they appeal. Affirmed.

Hoyt & Butler, Adkins & Kimbrough, and Chas. H. Keffer, for plaintiffs in error.

Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Irvin H. Gore and Clyde L. Harwell were jointly convicted of the murder of Lee Duke, alleged to have occurred the 28th day of March, 1922. At the trial, October 7, 1922, by a verdict of the jury plaintiffs in error were found guilty of murder as charged, and their punishment was assessed at imprisonment in the state penitentiary for life. From the judgment on the verdict they bring this appeal.

For convenience in this opinion the plaintiffs in error will be designated as defendants.

The deceased, Lee Duke, in the spring of 1922, arranged with the owner of a ranch in Ellis county, comprising about 20 sections of land, located about 6 miles southwest of Arnett, to permit Duke and these defendants to live in one of the ranch houses, with the privilege of pasturing not to exceed 50 head of live stock there. In consideration of this privilege the deceased and the defendants promised to keep the pasture fences, gates, and the premises generally in repair. Pursuant to this agreement they moved onto the premises and occupied a double house, granary, and stable. Some distance away they constructed a cave or dugout, where, without the knowledge of the ranch owner, they commenced to manufacture whisky. The land thereabouts was of a sandy nature, with clumps of shinnery and plum bushes growing. Shinnery bushes were placed in the mound

of sand and earth of which the roof of the cave was made, so that it had the appearance of other shinnery thickets around about.

The defendants claim that the deceased, Duke, had an arrangement with some person whose name, residence, and identity are not disclosed in the record to dispose of the whisky which they were to make. According to defendants' testimony, the defendants and the deceased had manufactured about 30 gallons of whisky, and were waiting for this man to come and take it. The parties interchangeably used an old Ford roadster to run errands and bring in supplies. On Monday the defendants were on the premises while the deceased was away. At about 4 o'clock in the afternoon Duke returned, and a half hour later the defendants took the car and started to go to where their relatives lived in Dewey county, about 30 miles distant, for the purpose of procuring meat and other supplies, and to visit with their relatives. Duke remained on the ranch premises alone. On the following morning, at sunrise, neighbors saw the ranch house in flames. A number of persons who saw the fire assembled at the place after the building was nearly consumed, and saw in the ruins the charred body of a man lying on some wire bed springs. By means of a gas pipe they pulled the springs on which the body lay from the burning mass. Later an autopsy was held over this body, which disclosed that this man had first been shot twice, there being two mortal shotgun wounds. The body was identified as the body of Duke by the finding of a gold tooth, a silver finger ring, and portions of unburned clothing corresponding to the clothing last seen on the deceased. The remains of an automatic shotgun belonging to the deceased was also found in the burning embers. No whisky was found anywhere on or about the premises. Some shoe

tracks were observed, leading away from the house, through some thickets, orchard, and pasture, meandering in different directions, and these tracks were later found to correspond to the tracks made by the shoes taken from defendant Harwell by the officers after his arrest.

Both defendants testified in detail as to their movements from the time they left the ranch until they were arrested the following day. They claim they had a lot of automobile trouble during the night; that their lights would not work, and they borrowed two lanterns from different people along the way; a spark plug had to be cleaned; the timer became disconnected, and, finally, near morning, the car refused to move, and they reclined in the car seat and slept until morning. Their movements, as testified to by them, from the time they left the ranch until about 1 o'clock the next morning were fully corroborated by witnesses for the state. There was no direct corroborating evidence to the account given by defendants covering the time from 1 o'clock a. m. until some time after sunrise that morning.

It was the theory of the state that the defendants shot Duke late in the evening, and then took Duke's car and drove to Harmon; that from there, after consultation between themselves, in order to conceal the murder they returned to the ranch early the following morning, and set the house on fire, and then left for the home of some of their relatives in Dewey county, some 30 or more miles distant, where they were seen at about 9 o'clock that morning. The defendants say that they learned from a brother of the deceased late Tuesday that the ranch house had burned, and that Duke was probably burned to death. They then drove back towards the ranch, as they say, to see about it. At an intervening town they put in a long distance call to learn the details, and while waiting for the call to be put through

they were arrested. No motive was shown for the killing, either on the part of the defendants or any other person.

The theory of the defendants was that this customer who was to come for the whisky, or some other person who may have known that whisky was there, attempted to take it from Duke by force, and in doing so wounded or killed him, and afterwards burned the house to conceal his dead body. There was no evidence to this effect; it was merely suggested as a possibility or probability, deduced from surrounding circumstances. There was some suspicion against the owner of the ranch, who aided the defendants to make their defense.

There was not much direct evidence implicating the defendants; the evidence pointing to their guilt was largely circumstantial. They and the deceased had been lifelong friends, and had never had a quarrel nor any misunderstanding, so far as this record shows. The shoe tracks shown in testimony were doubtless made by the defendant Harwell, but the state could not show definitely when they were made. These tracks were at places where these defendants may have been a day or two previous. There was some testimony tending to show that at the time of the fire there was a saddle horse belonging to Duke in the lot, with fresh perspiration on his back, and a damp saddle blanket and saddle near by. Other witnesses said the perspiration on the horse was dry.

This case was well tried in the trial court, and it has been exceptionally well presented and briefed in this court. The record contains 641 pages, no part of which is superfluous. The recital of further unimportant details in this opinion would prolong the narrative unnecessarily.

The assignments of error which we consider meritorious may be grouped thus:

(1) That the information was indefinite and duplicitous, in that it charged that death was produced by shooting and mortally wounding the deceased and by burning him to death.

(2) That the court erred in permitting the evidence of the identity of shoe tracks shown by placing one of the shoes belonging to defendant Harwell into tracks made in the sand near the scene of the murder, for the reason that the shoes so used were forcibly removed from defendant while under arrest, and that it amounted to obtaining self-incriminating evidence by coercion.

(3) Error of the court in permitting the state to show that the defendants had on previous occasions pleaded guilty or been convicted of offenses not involving moral turpitude.

(4) Alleged erroneous instructions given.

(5) That the evidence is insufficient to support the verdict, in that the evidence amounts to no more than a mere suspicion, and, being circumstantial, does not preclude every other reasonable hypothesis than the guilt of defendants.

The mere fact that an information in one count describes more than one criminal act does not make it defective, provided it clearly appears that the accused is charged with the commission of but one crime, and where the other crimes stated are descriptive of the ways and means of the commission of the crime charged. Elliott v. State, 4 Okla. Cr. 224, 111 Pac. 820, 140 Am. St. Rep. 683; section 2558, Comp. Stat. 1921; People v. Schiessel, 127 App. Div. 510, 112 N. Y. Supp. 45, and cases treated. The offense charged was murder; the information stated that the offense was accomplished by mortally wounding the deceased with firearms,

and burning his body with fire. Defendants' counsel, with much skill and ingenuity, argue that, if the information states but one offense, then it is incumbent upon the state to prove that the fire was the ultimate cause of death after proof of the mortal gunshot wounds. This court will not indulge such technical refinements. The information charged that the deceased suffered death from the mortal gunshot wounds and from fire following. The primary object of this proceeding was to find out whether these accused were guilty of murder. It would amount to an absurdity to hold that murderers should go free because in a case like this the state was unable to prove that life was extinct before the fire consumed the body, or because it was unable to prove that the gunshot wounds and the fire together caused death. If the proof shows that the defendants were responsible for both the mortal wound and the fire following, with homicidal intent, what right have the defendants to demand that a showing be made that one or the other was the proximate cause of death? For this reason, if a new trial were granted, and the pleadings amended as suggested, the accused would not be given any right or advantage not accorded under the information as it stands. This holding is in keeping with principles of common justice and with the spirit of the law as outlined in several different sections of our Criminal Code, among which is section 2564, Comp. Stat. 1921, as follows:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Section 21 of our Bill of Rights provides that—

"No person shall be compelled to give evidence which will tend to incriminate him."

A like provision is found in the federal Constitution. Do these constitutional provisions or prohibitions protect one accused of crime and under arrest from being compelled to surrender his shoes to the arresting officer for the purpose of ascertaining whether the shoes fit the tracks found at the scene of the crime? This constitutional right was primarily designed to prevent the ancient practice of extorting confessions from suspected persons by torture—the rack, the thumbscrew, confinement in dungeons, the lash, and other means of physical torture, and in modern times to prevent what is commonly called the "third degree." These inhuman practices used as a means of obtaining confessions of guilt or for obtaining evidence against others often resulted in the conviction of innocent persons. The prohibition was not designed to protect those guilty of crime or to hamper or prevent the detection of crime, where the means employed have no tendency to fasten guilt upon innocent persons. Every person accused of crime must be accorded every constitutional right; but one accused of crime is not clothed with any sacred or unusual rights, except that he may claim immunity from any and all practices that have a dangerous tendency to implicate those who may be innocent. These being absent, the paramount inherent rights of society should prevail. Although there are decisions to the contrary, we think the taking of the shoes of this defendant to see if they fit the tracks found at or near the scene of the murder was not prejudicial, and had no direct tendency to extort or force a confession, or to implicate others who might be innocent. Ricketts v. State, 23 Okla. Cr. 267, 215 Pac. 212.

The principle here involved is well stated in State v. Graham, 74 N. C. 646, 21 Am. Rep. 493, thus:

"The object of all evidence is to elicit the truth. Confessions which are not voluntary, but are made either under the fear of punishment if they are not made, or in the hope of escaping punishment if they are made, are not received as evidence, because experience shows that they are liable to be influenced by those motives, and cannot be relied on as guides to the truth. But this objection will not apply to evidence of the sort before us. No fears or hopes of the prisoner could procure the resemblance of his tracks to that found in the cornfield. This resemblance was a fact calculated to aid the jury and fit for their consideration. Evidence of this sort is called by the civilians 'real evidence,' is always admissible, and is of greater or less value according to the circumstances."

See, also, Wigmore on Evidence, 3123, 3328; Myers v. State, 97 Ga. 76, 25 S. E. 252; State v. Fuller, 34 Mont. 12, 85 Pac. 369, 8 L. R. A. (N. S.) 762, 9 Ann. Cas. 648.

It is claimed the court erred in permitting the defendants to be interrogated on cross-examination concerning former convictions of crimes committed by them, not involving moral turpitude. Whether or not an offense involves moral turpitude is not the test in this state. The accused may be interrogated concerning other convictions of crime. Section 585, Comp. Stat. 1921; Hendricks v. State, 23 Okla. Cr. 18, 212 Pac. 330.

The testimony of two witnesses taken at the preliminary examination was read in evidence, over the objections of defendants. Without a detailed explanation, we hold that the showing made that both witnesses were out of the state constituted a sufficient predicate for the introduction of this testimony in this manner.

Defendants complain of this instruction:

"You are instructed that the state relied for a conviction in this case upon what is known as circumstantial evi-

dence; and in this matter you are instructed that, to warrant a conviction upon circumstantial evidence, each fact necessary to the conclusion sought to be established—that is, the guilt of the defendants—must be proved by competent evidence, beyond a reasonable doubt, and that all facts and circumstances proved should not only be consistent with the guilt of the accused, but consistent with each other and inconsistent with any other reasonable hypothesis or conclusion than that of their guilt, and sufficient to produce in your minds the **reasonable moral certainty** that the accused committed the offense against them. And you are instructed that, when the circumstances are sufficient under this rule herein given you, they are competent, and are to be regarded by the jury as competent for your guidance as direct evidence.''

Defendants say the word ''all'' and the expression ''reasonable moral certainty,'' as italicized by us, made the instruction misleading. Under some circumstances such criticism might be seriously considered, but under the evidence here we do not think that the jury could have been misled by this instruction, considered with all the other instructions given. Jurors ordinarily are not expert logicians, capable or prone to analyze language for fine distinctions of meaning. This instruction means, and the jury doubtless understood, that the facts proved as a whole should indicate the guilt of the accused, and should exclude every indication that some other person committed the crime.

It was seriously urged at the trial and in the motion for a new trial, as well as before this court, that the evidence was insufficient to support the verdict. There were and are some good reasons offered to support this claim, such as the want of a proven motive, the failure of the state to show that the accused were in the vicinity of the ranch house in the early morning preceding the fire, the apparently rational explanations of defendants as to their whereabouts, corroborated in many particulars by disinterested witnesses,

the reasons given for making a detour out of Harmon to avoid bad roads, their effort to return to the ranch as soon as they were informed of the fire by a brother of the deceased, and the explanations given concerning the tracks, all of which seems natural and reasonable, considering all that appears in this record.

If the writer of this opinion had been a juror he would have hesitated, indeed probably refused, to concur in the verdict as rendered. However, upon questions of fact the jury may have been better able to reach a correct conclusion than the members of this court. The jurors saw the several exhibits introduced, not transmitted with the record; they saw the defendants and the various witnesses in court, and had an opportunity to observe their demeanor, their apparent candor or want of candor, and whether or not they appeared to be actuated by any bias or ulterior motive. The jurors doubtless considered the fact that the defendants drove out of Harmon at about 1 o'clock of that morning in a direction exactly opposite the town of Vici, their declared destination (this defendants admit, saying they did so to avoid bad roads), considered the fact that defendants purchased and used an unusually large amount of gasoline for a car to have consumed in traveling the distance they say they traveled, considered the fact that during the early portion of the trip, until after midnight, the defendants, especially one of them, appeared to have been under the influence of liquor, and considered the fact that no liquor was found anywhere on the premises after the fire. These circumstances, considered conjunctively, may have justified the jury in finding the defendants guilty, to the exclusion of every other reasonable hypothesis. This court will not, under such circumstances, be justified in substituting its conclusions of fact for those found by the jury. If there is a

total want of evidence on some essential point this court would be justified in setting a verdict aside; but, where there is some evidence on all the points involved, this court cannot ordinarily pass on the weight or probative force of the evidence. Subsequent developments may indicate that this is a case meriting executive clemency.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.