STATE *v.* VINSON.

A mule had been stolen from the residence of its owner upon Saturday night, and upon the next night, again, from the residence of A. B.: *Held*, that the fact that upon Sunday morning the prisoner had carried the mule—which from appearances then had been tied out during part of the preceding night, to the house of A. B.; even when taken in connection with the additional fact that he assisted in stealing it upon Sunday night, although it might raise a conjecture, was *no evidence* that he had stolen it on the night before.

(*State* v. *Allen*, 1 Hawks 6; *State* v. *Ingold*, 4 Jon. 217; *Mathis* v. *Mathis*, 3 Jon. 132; *Sutton* v. *Madre*, 2 Jon. 320; *Hart* v. *Newland*, 3 Hawks, 122; *State* v. *O'Neal*, 7 Jon. 251; *Homesley* v. *Hogue*, 2 Jon. 39, cited and approved.)

LARCENY, tried before *Warren, J.*, at Spring Term 1868 of the Superior Court of WAYNE.

This was an indictment against the defendant and one John Thomas, for stealing a mule. The evidence was that the mule was the property of Council Wooten, administrator of John Wooten, deceased, and that it was stolen on a Saturday night from the residence of Mrs. Wooten, widow of said John Wooten. That early the next morning the mule, having on it a broken bridle, was seen about 300 yards from the residence of Mrs. Phoebe Woodward, the mother of the defendant, with whom he lived, going in the direction of said residence and from the direction of a spot in the woods where some animal

of the kind had been recently tied to a tree, about equi-distant. from the residence of the said John Thomas and Mrs. Wood-ward. That on that morning, the defendant carried the mule to the house of one Tom Best, a colored man, who lived about a quarter of a mile from defendant's mother, and on her land, and asked him to keep it there. Best objected because of his scarce supply of provender, and because the mule might have been stolen. Defendant told him to keep it till the owner came, and the owner would doubtless pay him, and he at length consented to do so. That during that day the defendant and John Thomas had several conferences together at different times and places, and that Thomas and one Needham Smith went to Mrs. Woodward's about 10 o'clock in the morning, and inquired for the defendant and a stray mule. Thomas was introduced as a witness for the State, and testified that Vinson proposed to him to take the mule off and sell it. After some chaffering about the division of the proceeds of the sale, this was agreed upon. In pursuance of this design they employed Joe Best, son of Thomas Best, to chain and keep off a fierce dog, and that (Sunday) night he and Vinson went a little after dark, and took the mule from the premises of Tom Best, without his knowledge or consent. Witness carried the mule off for the purpose of selling it, but was overtaken and arrested. He told Vinson that he had said to those who arrested him, that he got the mule from him, Vinson, and Vinson replied, " you ought not to have told that."

The defendants excepted to the competency of this witness on the ground that he was a co-defendant in the indictment—that it had been found true as to him—that he had been arrested thereon and had not been tried. The exception was overruled.

It was also in evidence that during the whole of the said Saturday night, the defendant was present at a dance eight miles distant from the residence of Mrs. Wooten and two or three miles from that of Mrs. Woodard.

Mrs. Woodard testified that the mule came to her premises early on Sunday morning and jumped the fence into a lot near

the house; that shortly after the defendant came home, and at her instance, carried the mule to Tom Best's. That soon after Thomas and Smith came to the house (about 10 o'clock,) they started off at defendant's suggestion, to look at the mule.

The Court charged the jury (among other things) that if they believed the defendant did not steal the mule himself, and was not present when it was stolen, yet if he advised and procured it to be done, he was guilty. Defendant excepted, on the ground that there was no evidence to sustain this view of the case.

The Court instructed the jury as to what evidence would tend to show a felonious or an innocent purpose on the part of one who takes property by finding.

The Court also charged that if the defendant had in good faith put the mule in the possession of Best to keep for the owner, and was innocent up to that time, yet, if he afterwards confederated with Thomas to take and carry away the mule and they did this with the felonious intent necessary to constitute the crime of larceny, (which was explained to the jury,) he was guilty, and to this the defendant excepted.

Verdict: "guilty." Rule for new trial. Rule discharged, Judgment and appeal.

*Strong,* for the appellant.

The circumstance that the defendant stole the mule from the possession of Best, is no evidence that he had stolen him before that,—more than that he had previously stolen some other mule at a different time and place. See the cases *Bond* v. *McBoyle,* 7 Jon. 1; *Benton* v. *March,* 6 Jon. 409; *Mathis* v. *Mathis,* 3 Jon. 132; *Sutton* v. *Madre,* 2 Jon. 320; *State* v. *Revels,* Bus. 200; *Cobb* v. *Fogleman,* 1 Ire. 440; *State* v. *Haywood,* Phil. 378.

*Attorney General, contra.*

RODMAN, J.   There was ample evidence to convict the prisoner of having stolen the mule from the residence of Best, on

Sunday night, if the jury believed it. But we cannot know that the jury did believe it, and that they did not find him guilty of the larceny, which the case states was committed by some one, on the previous Saturday night from the residence of Mrs. Wooten. *State* v. *Allen,* 1 Hawks, 6; *State* v. *Ingold,* 4 Jon. 217. The Judge told the jury, in effect, that there was evidence, from which they might find, that the prisoner either stole the mule himself on the Saturday night, or procured it to be done; to which the prisoner excepted. All the other exceptions taken by the prisoner, are properly abandoned in this Court. So that the only question is, whether the case shows any evidence tending to prove the guilt of the prisoner on the Saturday night. It is easy enough to express in general terms the rule of law; if there be any evidence tending to prove the fact in issue, the weight of it must be left to the jury, but if there be no evidence conducing to that conclusion, the Judge should so say, and, in a criminal case, direct an acquittal. *Hepburn* v. *Dubois,* 12 Peters, 345; *Gibson* v. *Hunter,* 2 H. Bl. 205.

But it is confessedly difficult to draw the line between evidence which is very slight, and that, which, as having no bearing on the fact to be proved, is, in relation to that fact, no evidence at all. We may say with certainty, that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury. *Matthis* v. *Matthis,* 3 Jon. 132; *Sutton* v. *Madre,* 2 Jon. 320. We may go farther, and say that the evidence must be such as will support a reasonable inference of the fact in issue. 1 *Phil. Ev.* 460. In *Rex* v. *Burdett,* 4 B. and A. 161, (6 E. C. L. R.,) Abbott, J., says "a presumption of any fact is properly an inference of that fact, from other facts that are known; it is an act of reasoning."

Probably the rule in such cases can never be more definitely declared, than it was by this Court in *Hart* v. *Newland,* 3 Hawks, 122. There, Henderson, J., delivering the opinion of the Court, says: "Evidence is of two kinds; that which, if

true, directly proves the fact in issue, and that which proves another fact, from which the fact in issue may be inferred. The rules regarding competency, only apply to the first kind, and relevancy to the second. The Court protects the jury both from incompetent and irrelevant evidence"—"the rules of evidence are framed more with a view to exclude false-hood, than to let in the truth." "That the fact to be infer-red *often* accompanies the fact proven, is not sufficient; it should *most usually* accompany it; and I would say, in the absence of all circumstances, that it should rarely otherwise happen.

In Roscoe's Crim. Ev. p. 14, citing Gilbert's Ev. 157, (1) the same rule is declared; "when the fact itself cannot be proved, that which comes nearest the proof of the fact, is the proof of the circumstances that necessarily and usually attend such fact." If the fact offered to be proved, be equally con-sistent with the existence, or non-existence of the fact sought to be inferred from it, the evidence can furnish no presump-tion either way, as in such a case, the one fact does not most usually attend the other. With the aid of these general prin-ciples, we may proceed to consider the particular question presented in this case. In doing so, we must of course regard only the affirmative evidence in the case. The evidence is circumstantial. The fact to be proved is the guilt of the pris-oner on Saturday night, and the facts from which it is sought to be inferred are the occurrences on the next day. Were they such as to furnish a reasonable inference of the main fact?

The first time that the evidence directly brings the prisoner into any connexion with the mule, is on the Sunday morning, when it came to the house of Mrs. Woodward, where the pris-oner resided, having on it a broken bridle. It must be assumed that the mule had been tied out to a tree during some part of the preceding night, and had broken loose. The prisoner then took the mule to the house of Best. It is quite immate-rial whether he did this, because there was at Mrs. Woodward's no place proper to confine it in, or because he then formed the design of stealing it, and conceived that it would be more safely done from the house of Best, than from his mother's. We

think it must be admitted that, had the evidence stopped here,. no one could do more, at the utmost, than conjecture, that the prisoner carried the mule to Best's house, because he had stolen it from Mrs. Wooten's house the night before. About ten o'clock that morning, Thomas and Smith came to Mrs. Woodward's house, and inquired for the prisoner, and a stray mule. On that night the prisoner and Thomas stole the mule from the possession of Best. The question is then reduced to this; are any of the facts proved, either singly or in combination, such as necessarily, or most usually, or often, attend a prior theft? Are they not, either singly or combined, consistent with the innocence of the prisoner of the theft on the Saturday night? No doubt, the theft on Sunday night proved the possibility of the prisoner's guilt; that he was not too good to steal. But if it proved no more than this, and we think it proved no more in respect to the theft on Saturday night, then it was not evidence of his guilt of that particular theft. The general bad character of a prisoner cannot be given in evidence to convict him of any particular charge. *State* v. *O'Neal*, 7 Ire. 251; *Homesley* v. *Hogue*, 2 Jon. 391, 3 Greenleaf on Ev. § 25,—nor can it be proved that at another time, he committed an offence similar to that charged, or that he had a tendency to commit such offences; 1 Phil. Ev. 477. There is some similarity between the present case and that of *The King* v. *Vandercomb and Abbott*, 2 Leach's Cr. Ca. 708. In that case a burglary and larceny had been committed by some one; afterwards the prisoners were detected and arrested after they had committed a burglary in the same house, but before they had committed any larceny on that occasion. They were indicted for burglary and larceny. The Judge said they could not be convicted of the second burglary, because no larceny attended it. The prosecution contended, that they could be convicted of the first burglary and larceny, although the only evidence of their connexion with it was, that they had committed the second burglary. The Judge directed an acquittal. It is true that the Judge put his directions on the ground, that the prosecutor having given evidence of one felony, could not go into

proof of a distinct and substantive one; but if the second bur-glary could have been received as any evidence to connect the prisoners with the prior burglary and larceny, it would have been the duty of the Judge to have left the weight of it to the jury, instead of directing an acquittal. We think there was error in the instructions of the Judge below, and the prisoner must have a new trial.

PER CURIAM.                                    *Venire de novo.*