THE STATE v. FRANK GOODSON.

*Homicide—Evidence.*

The deceased, a woman, was found dead just outside of her house, which was about one-half mile from the town of Marion and one-fourth of a mile from a public road, about 11 o'clock A. M. on 30th April. The body bore evidence of a most brutal murder and an attempt to burn. The prisoner, who was a laborer on a railroad near by, had been seen frequently, previous to the murder, going in the direction of deceased's house, and, on the afternoon of the

day preceding the finding of the body, was seen talking with a person who resided near deceased, after which he went in the direction of her house. Shortly after, he was seen in the town, drinking. He spoke of going to see his "old gal," and of having sexual intercourse with some woman. He was further heard to say: "I expect to kill some d——d woman, and have got money enough to carry me wherever I want to go." A witness said he saw a person he believed to be the prisoner, on the same afternoon, going as if from the house of deceased, across a field, not in any path-way, and he was walking briskly—"almost in a trot"—and, once or twice, without stopping, looked back toward the deceased's house. After his arrest, the prisoner's clothing was examined, and splotches, which had the appearance of blood, were found upon it; but the tracks near the place of the homicide, did not correspond with prisoner's foot. The prisoner made no attempt to fly: *Held,* that while these facts established a strong suspicion against the prisoner, they were not sufficient to warrant his conviction of murder, and the jury should have been so instructed.

Indictment for Murder, tried at Fall Term, 1890, of the Superior Court of McDOWELL County, *Merrimon, J.,* presiding.

There was a verdict of "guilty," and judgment of death, from which prisoner appealed.

The facts are stated in the opinion.

*The Attorney General,* for the State.
*Mr. J. F. Morphew,* for the defendant.

MERRIMON, C. J.: The evidence produced on the trial was abundant to prove, indeed, it was not denied, that some person murdered the deceased, but the prisoner insisted that there was no evidence to go to the jury to prove that he was the guilty party, as charged in the indictment. The Court held otherwise, and the prisoner excepted, thus presenting a single question for our consideration.

It is well settled that the evidence produced for such purpose should be sufficient, in some reasonable aspect of it, to prove the prisoner's guilt, else the Court should instruct the

jury that there was no evidence to warrant a verdict of guilty, and they should render a verdict of acquittal. *State v. Brackville*, 106 N. C., 701, and the cases there cited.

We have examined with much care and scrutiny the evidence sent up as part of the case stated on appeal, and are of opinion that it was not sufficient to prove the prisoner's guilt, or to go to the jury for that purpose. Accepting the evidence as true, and sufficient to prove the facts to which it related, and giving these facts, severally and collectively, and in their bearing each upon the other, due weight, in any view of them they simply raise a strong suspicion of his guilt. The evidence pointing to the prisoner is circumstantial. The facts may be true; they may be taken, in any combination of them of which in their nature they are capable, and they fail to prove his guilt; they are inconclusive as to the material fact of guilt. The evidence thus taken may be true, and yet the prisoner may be innocent.

It appears from the material parts of the evidence pointing to the prisoner that he was a laborer on the railroad about two miles distant from the house of the deceased, which was situate in a field about a quarter of a mile from the public road, and half a mile from town; that he passed not far distant from her house in going to and from the town of Marion; that he had been seen repeatedly in the neighborhood of her house—more than once going in the direction of it. About two or three o'clock of the evening on which the homicide was probably perpetrated he talked with a witness at her house about a quarter of a mile distant from that of deceased, and when he left, saying that he was going to town about half a mile distant, he went across the field in the direction of where deceased lived; he went to town and returned, the witness last mentioned seeing him about five o'clock the same evening passing along the public road. Another witness said he saw him—was not positive that he was the same person—passing as if going from the

house of the deceased across the field—not in the pathway—walking briskly—nearly in a trot; looked back towards the house; went a short distance and looked back again, and then passed on out of sight of the witness. On the same day, in the forenoon, he was heard to say that he was going up to town to see his "old gal;" he expressed his desire to have sexual connection with a woman—did not say what woman; was seen about an hour by sun of the same day in the evening; wanted liquor—had some—gave the witness some; said, "I've got $108, and I expect to kill some d——d woman, and I've got money enough to carry me wherever I want to go;" he went on down the railroad from this witness; was about three miles from the town. A witness, while the prisoner was in jail, asked him to take off his vest; he at first refused, but did so; some "splotches" were found on his vest and some on his pants; the expert thought the "splotches" were blood, but might be mistaken; did not make best test. Prisoner hesitated, while in jail, to take off one of his shoes; he did so, however; it did not correspond with or fit the tracks seen and measured.

This full summary of the incriminating facts, taken in the strongest view of them adverse to the prisoner, excite suspicion in the just mind that he is guilty, but such view is far from excluding the rational conclusion that some other unknown person may be the guilty party. The mind is not simply left in a state of hesitancy and anxious doubt—it refuses to reach a conclusion. But there is an absence of facts which lessen the force of the view just mentioned that must be taken into consideration here. So far as appears, no one ever saw the prisoner at the house of the deceased, or saw him with her, or heard him speak of her, or knew of his having relations of intimacy, or otherwise, with her. There is no evidence that he, at any time, manifested anxiety, nor did he flee; nor was there evidence of ill-will or threat on his part towards the deceased, nor of motive to harm her.

107—51

He had opportunity to do the murder, but there is a total absence of motive to do it, unless it might be very remotely and vaguely inferred. That he had motive, so far as appears, is altogether conjectural. The inference that he sought to, or did, ravish her, and, in that connection, for any cause, took her life, is remote, conjectural and unsatisfactory. There was large opportunity for some other person to have done the crime. Many persons lived near to her. She lived half a mile from the county town, not far from where many persons—men—were working grading a railroad. She was a laundress, and probably knew, and had business with, such men, many of them, no doubt, more or less dissolute and immoral. There was evidence to show that she was a lewd woman; that she never had been married; that she was white, and had two bastard children of mixed blood.

Such evidence—such a state of facts, leading to no satisfactory conclusion as to the principal fact, but leaving the question of the prisoner's guilt or innocence in grave doubt, is not sufficient, in any just view of the same, to warrant a verdict of guilty, and the Court should have so instructed the jury. The prisoner is entitled to a new trial.

Error.