·THE STATE v. JAMES RHODES.

*Arson—Barn Burning—Evidence.*

1. Upon the trial of an indictment for burning a barn, it was not error to permit the State to show that the defendant had made threats, previous to the burning, that he would do some injury to the son of the prosecutor.

2. Evidence of facts, which in themselves are slight, should, in cases where the State relies upon circumstantial testimony, be admitted if they, with other facts proved, bear upon the crime charged.

3. Upon the trial of an indictment for burning a barn, there was evidence of threats by defendant to do injury to the property of the prosecutor; that on the night of the burning some one was seen going from the direction of the barn toward the home of the defendant, and that a short while before he had been heard to inquire about a direct way from his house to the vicinity of the building burned, but there was no other evidence to connect him with the crime: *Held*, that there was not evidence sufficient to go to the jury.

INDICTMENT for burning a barn, tried at April Term, 1892, of FRANKLIN Superior Court, before *Bryan, J.*

The following is the testimony set out in the case: T. J. King testified that· the burning of the barn occurred on the first Saturday night in November, 1891; that defendant is married and wanted him to force his wife to live with him, and the witness persuaded her to do so; she lived on the

land of Mrs. M. H. King, whose barn was alleged to have been burned.

Andrew Young stated that he knew the defendant, and that defendant and his wife separated about a month before the fire; that defendant had said that King was keeping his wife away from him and had to pay for it. Defendant excepted. King is the son of Mrs. King, the prosecutrix, who was in possession of the land, and was her agent and manager.

Ella Dunstan testified that defendant said that King was making him see trouble about his wife, but he was going to keep easy until his " peace bond was up " (defendant had previously given a bond before a Justice of the Peace), and then defendant was going to King and tell him to get his wife away from there, and if he didn't, he would hurt them; his wife put him under bond; the witness stated to defendant that he must mean something like murdering, and he said he could do it. Defendant excepted—the State promising to connect this with the burning.

J. R. Wheeler testified that he heard defendant make threats against King (of the character above mentioned) but did not give King any notice of the threats, as the witness had not seen King or any of his family; these threats were made about three weeks before the burning; defendant talked to witness about his wife's living on King's land, and said he was going to see King about it, and said he would damage King; that it would cost him $200 if King did not move his wife off the land; this was about eleven days before the burning; the witness did not tell the Kings about this before the fire. There was also evidence of threats against Mrs. King.

Charles Jones testified that in April the defendant said he could do King a private injury and the law couldn't hurt him; defendant was talking about his wife and complaining

because King let her live on his land.  Other witnesses testified substantially to the same effect.

Upon redirect examination it was shown in evidence that the defendant was arrested Sunday evening.

Calvin Stallings testified that he knew when the barn was burned, and that some one passed in the direction in which the defendant and others lived, about 4 o'clock A. M. on said Saturday night.

W. B. Hunter testified that he saw the defendant on the day he was arrested, and that defendant said he was up until about midnight the night before about killing a beef.  The State here rested its case.

The defendant objected to the testimony of the witnesses as to the threats against T. J. King, when the indictment charges the defendant with burning the barn of Mrs. Mary H. King, and excepted to its admission.

. Joseph Jones testified that the defendant lived about a mile and a half from where his wife lived, and that there was a road from his house to his wife's, which road crossed a creek; that an air-line run across the creek at a different point from where the road crossed it would be a shorter distance to Mrs. King's house; on Friday evening, before the burning, the defendant asked if he could cross the creek (objected to by defendant); that it was a straight line to Mrs. King's; but one could not cross without getting muddy, but could cross on a fence; there was a pond above and one below the straight line, and to have gone by either pond would have put him a mile out of the way; that on the creek between the ponds, there was a path to Mrs. King's; that defendant went in the direction witness had described.

The defendant asked his Honor to instruct the jury that there was no evidence to go to the jury warranting them to convict defendant, and excepted to his Honor's refusal so to charge.  There was a verdict of guilty, and the defendant appealed from the judgment pronounced.

*The Attorney General,* for the State.
*Mr. W. M. Person,* for defendant.

MacRae, J., after stating the case as above, proceeded: In the first exception we can see no force. Where the State relies upon facts and circumstances tending to prove the guilt of the defendant, such evidence, though slight in each separate instance, is competent if it, with other facts offered in evidence, bears upon the charge in the bill of indictment. *State* v. *Thompson,* 97 N. C., 496.

As to the second exception, upon a careful examination of the testimony we find abundant evidence of threats made by defendant against T. J. King, and once against Mrs. King. These threats seem to have been made because of the fact that defendant's wife was separated from him and living upon the land of Mrs. King, and defendant complained that T. J. King, or Mrs. King, would not send her off Mrs. King's land. In addition to the testimony as to the threats, there is testimony of one witness that on Friday evening before the burning occurred on Saturday night, the defendant inquired if he could cross a creek at a point where there was said to be a path leading by a short way to Mrs. King's. Whether this path would have carried defendant by a shorter way to the house where his wife lived we cannot determine from the testimony. The other testimony is that defendant was arrested on Sunday, and said he was up until about midnight the night before killing a beef.

The general rule is, if there be any evidence tending to prove the fact in issue the weight of it must be left to the jury, but if there be no evidence conducing to that conclusion the Judge should say so, and, in a criminal case, direct an acquittal. *State* v. *Vinson,* 63 N. C., 335. The evidence offered did not tend to prove the fact of the burning by defendant, but it was for the purpose of proving other facts which, if true, would compel the inference by the jury of

defendant's guilt. To quote further from the same case: "But it is confessedly difficult to draw the line between evidence which is very slight, and that which, as having no bearing on the fact to be proved, is in relation to that fact no evidence at all." The evidence must be more than sufficient to raise a suspicion or a conjecture. Where there is evidence to go to the jury, they must pass upon its weight, but if the evidence, taken as a whole, will not warrant a verdict of guilty, there is no evidence sufficient to be left to the jury, and the Court should so declare. *State* v. *Powell*, 94 N. C., 965. If we apply the principles laid down in the above cases, and elaborated in the case of *State* v. *Brackville*, 106 N. C., 701, and *State* v. *Goodson*, 107 N. C., 798, to the one before us, we will come to the conclusion that there was not evidence sufficient to go to the jury.

Eliminating the threats, there is nothing left. We seriously apprehend that injustice has been done his Honor who tried this case, but who did not make out the statement on appeal. What purports to be his notes of the testimony is copied into the case. These are evidently rough notes or memoranda from which, aided by memory, a true statement of the evidence could have been made, but we must take it for all the testimony in the case, and upon this testimony we are constrained to hold that there is error, and award a *venire de novo.*

Error.