### STATE v. FRED CARMON.

(Filed 27 November, 1907).

**Assault and Battery—Evidence—Question for Jury—Motive.**

Evidence is sufficient to go to the jury, of an assault and battery, that witness had known defendant for two months; that, while it was dark when the assault was committed, he "got a glimpse" of him just after the pistol was fired (causing the injury) ; that "he took it to be" the defendant, at that time only fifteen feet from him; by another witness, that, though his vision was obscured by the lights of the room in which he was sitting, from looking out into the darkness, and, therefore, almost impossible to recognize a person upon the outside, he "threw his eyes around" immediately after he heard the pistol shot, and saw a person whom he "took to be" defendant, who had a pistol in his right hand, or something like one—there being evidence of a motive for the assault.

145—31

CRIMINAL ACTION, tried before *Moore, J.,* and a jury, at May Term, 1907, of the Superior Court of ROWAN County.

The defendant was indicted for a secret assault and was convicted of an assault and battery. The testimony was as follows:

George Kluttz testified: "The defendant is a negro. I live in East Spencer, with my father, and he and I are engaged in running a store and meat market. On 27 April, 1907, about 10:30 P. M., I was shot in the leg. At the time I was shot I was sitting on the counter in the store, about four or five feet from the door. It was a dark night, except a little light given by the moon. There were no lights in the street, near or in front of the store where I was sitting. The store was lighted with three lights, and at the front door there was a shed, the width of the store, over the sidewalk, about seven or eight feet high. There was a small lamp burning in the hallway of the Climax Hotel, which was diagonally across the street from the store. It was dark in the street. I did not see the defendant when he came up, and did not know he was in the street. I did not see him shoot a pistol and did not see his face, but after the shot was fired I got a glimpse of a person I took to be defendant. The pistol was fired from the street into the store, a distance of fifteen or more feet from where I was sitting. The defendant had been in the store about 8 o'clock P. M. previous to the shooting, and had some words with my father about his account, and when he went out my father followed him and beat him. When the pistol fired I looked and saw some person running in the direction of the Climax Hotel. Defendant lives in a different direction from this hotel. I have known the defendant about two months. I have been laid up, under the care of a doctor, since I was shot, and the bullet is still in my leg, near my ankle. Not more than a second elapsed from the time of the shooting until I got the glimpse of some person leaving, whom I thought was defendant."

J. R. Kluttz testified: "The shot was fired about 10:30, P. M., and hit my son, George Kluttz. It was dark in the street, and no lights were there or in front of the store, and the only light was from the store, where we were sitting. I know it was almost impossible for us, being where the lights were shining, to see out into the dark and recognize a person ten or fifteen feet from where we were sitting, as the light naturally would blind a person looking from a lighted place into the darkness; but immediately after the shot was fired I threw my eyes around and saw a person I took to be defendant, and saw in his right hand something that looked like a pistol to me. The defendant ran in the direction of the Climax Hotel."

There was evidence on the part of the defendant tending to show an *alibi,* but it is not necessary to state it. Judgment was rendered on the verdict of guilty, and the defendant excepted and appealed.

*Assistant Attorney-General Clement* for the State.
*R. Lee Wright* and *P. S. Carlton* for defendant.

WALKER, J. The jury might well have acquitted the defendant upon the testimony in this case, but we are unable to declare that there is no evidence of his guilt. We admit that some of the testimony was not of a very satisfactory character and might be denominated as slight, but the evidence, taken as a whole, was sufficient for the consideration of the jury, and we are not permitted to interfere and set aside the verdict in such a case. Indeed, we are expressly forbidden by a provision of the Constitution of many years' standing, and a most wise and wholesome one, from doing so. This is a court for the correction of errors in law. In this case we would not disturb the verdict if we had the power, as the trial was presided over by an eminently fair and able Judge, who, we are sure, was careful to safeguard the rights of the defendant. The Judge below receives a better impression of the true

merits of a case than we possibly can do, who do not see and hear the witnesses and are not able to observe the other incidents of the trial. He is, therefore, the proper one to determine whether the verdict is against the weight of the evidence or not.

We cannot reverse the ruling of the Court upon the sufficiency of the evidence, unless we overrule several cases decided by this Court, which we are unwilling to do. The witness George Kluttz testified that he knew the defendant and had known him for two months; that, while it was dark when the assault was committed, he "got a glimpse" of him just after the pistol was fired, a second only intervening, and that he "thought" it was and "took it to be" the defendant, the latter being only fifteen feet from him at the time. His father stated that, while his vision was obscured by the fact that he was looking from a lighted room, his store, into the darkness without, and it was almost impossible for that reason to recognize a person, yet he "threw his eyes around" immediately after the firing of the pistol and saw a person whom he "took to be" the defendant, and he also saw a pistol in his right hand, or something that looked like one. He further stated that the defendant ran in the direction of the Climax Hotel, though it appeared that this was not in the direction of his home. It seems to us that this testimony is as strong as that which, in *State v. Lytle,* 117 N. C., 803, was permitted to go to the jury, and upon which their verdict and the judgment were sustained by this Court. Indeed, we are of the opinion that the testimony in this case is much stronger than the testimony of the witness John Dawkins was in *State v. Lytle.* He testified in that case as follows: "I recollect the night when the barn was burnt. I met a man whom I took to be Lytle; I was in seven steps of him, the man whom I took to be Lytle, in the road, near my house. He was a low, chunky man. It was too dark to see whether he was white or black. He had his back to me; had on a dark sack coat. I have

known Lytle ten years; have seen him often. Had I spoken to him I would have called him Lytle. This was almost 7:30, on the Howard Gap Road. This was the night the barn was burnt." The Court held this evidence fully sufficient to uphold a conviction. Wherein is the difference between the two cases? If there is any, it is in favor of the sufficiency of the evidence in this case, because here we have, in addition to the impression made upon the minds of the *two* witnesses, the further fact that the defendant had been beaten by one of them less than two hours before the assault occurred, and, therefore, had the motive to shoot into the store. He may have missed his mark, it is true, but this does not destroy the force of the evidence as to the malicious motive. Besides, in *Lytle's case* there was but one witness to identify the defendant as the barn burner, while here we have the concurring testimony of two "eyewitnesses," upon whose minds the form and appearance of the fleeing criminal made identically the same impression. Then, again, one of the witnesses, George Kluttz, stated that he knew the defendant well enough, of course, to recognize him, and that he not only "took" him to be, but he "thought" that he was the defendant. We should not attach much importance to the particular form of the words used by the witnesses. When they said that they "took" the person who fired the pistol to be the defendant, or "thought" he was the defendant, it was evidently just another way, and their way, of saying that they recognized him. It was the simple language of men who plainly intended to convey that idea, but were not careful or accurate in expressing it. We might well refer to the fact, also, that the witness J. R. Kluttz, whose testimony was less positive and satisfactory than that of his son, stated that he saw a pistol in the hand of the person who was running in the direction of the hotel. It might reasonably have been argued that, as he knew the defendant and had an altercation with him that night, if he could see so small an object in the dark as a pistol

well enough to know what it was, he could just as well recognize the much larger object of a man whom he knew so well.

As to the motive being an important circumstance or link in the chain of evidence, it was not necessary, it is true, to show a motive for the shooting, but it became a most relevant fact, and one of much weight, in ascertaining the identity of the defendant. *State v. Adams,* 138 N. C., 688. It was absent in the cases we cite in support of our ruling upon the evidence. With the other facts and circumstances showing a recognition of the defendant as the intended assassin, admitting that they were very slight and almost inconsequential, why might not the jury, with evidence of the motive so recently formed, inquire, who else could have committed the crime? Who had any reason for making the assault? And then conclude, as we generally are influenced in our actions and conduct by our motives, malice or desire for vengeance, that the evidence clearly pointed to the defendant as the culprit. Motive may sometimes be a most cogent and convincing fact in the determination of guilt, even though in other respects the evidence may be destitute of reasonable precision or fail to afford just grounds for inferring the essential and ultimate fact of guilt. In *State v. Costner,* 127 N. C., 566, the Court said that the testimony, while of the same general character, was weaker than it was in *State v. Lytle,* and yet there was more than a *scintilla,* and it was, therefore, sufficient to support the conviction. See, also, *State v. Woodruff,* 67 N. C., 89; *State v. Telfair,* 109 N. C., 878. We conclude that the evidence in this case was not inconclusive as to the defendant's guilt, and was properly submitted to the jury.

No Error.