STATE v. GROVER WALKER and LONE WALKER.

(Filed 9 December, 1908).

1. **Evidence—Weight—Scintilla—Questions for Jury.**
   When there is more than a scintilla of evidence as to the identity of a defendant, it is for the jury to pass upon its weight.

2. **Secret Assault—Circumstantial Evidence—Sufficient.**
   Upon trial under indictment for secret assault against two defendants, judgment was rendered against both, one of them appealed. There was evidence tending to show that assault was made upon witness and two sons, and that one of the defendants, appellant's brother, was one of them; that a pistol ball, 38 calibre, was taken thereafter from witness's arm, and that a large number of No. 12 shotgun shells, and four or five No. 38 empty pistol shells, were found in the yard where the assault was made; that appellant had that evening bought several boxes of shotgun shells, No. 12, and was seen with the other defendant, who was armed with a 38-calibre pistol, about three hours before the occurrence, within time for them to have been present; that one of the occupants of the room had previously reported a blockade still of the appellant's brother, who was admitted to have been present. *Held*, the evidence, taken collectively, was sufficient to sustain the finding of the jury.

INDICTMENT against defendants for secret assault, tried before *Ferguson, J.,* and a jury, March Term, 1908, of WILKES.

· Jesse Fairchild, a witness for the State, testifying to the occurrence, said: "On the night of 13 November, 1907, between 11 and 12 o'clock, I was waked up by the roar of guns; shots were being rapidly fired into the house. There were some forty or fifty shots fired. They were shooting through the window toward the bed occupied by W. A. Fairchild. The room was occupied by W. A. Fairchild, Mrs. Fairchild, Mrs. Walker, grandmother of the defendant, and Jesse Fairchild.

"I got up, crawled to the bureau in the room; just as I put my hand in the drawer to get some shells to load my gun I was shot through the arm by a pistol ball. · (Witness produced the ball No. 38.)   While the shooting was going on Mrs. Walker says 'Grover, get away from here.' The firing up to that time had been through the window toward the bed occupied by W. A. Fairchild, the shots taking effect in the foot and head of the bed. After Mrs. Walker spoke to them they began firing toward the bed occupied by Mrs. Walker. The shots were all fired very rapidly and too fast, in my opinion, to have been fired by one person. The firing continued for something like 15 minutes. The pistol was fired 4 or 5 times. The gun fired about 50 times; shots taking effect in the house and the windows. I saw some one walk up to the window whom I took to be Grover Walker. I raised my gun to fire; he saw me and raised his. I fired just a little first, then his gun fired; he dropped his head· and walked around the chimney. Another shot was fired from the outside, then the firing ceased. I do not know whether that shot hit the house or not; I did not hear it hit. Next morning I went out; I traced blood from the window around the chimney to a pile of rock. There I found that the man had fallen over the rock pile. From the rock pile I traced

blood to a pile of sticks; there was blood on the sticks and every evidence that indicated that he had fallen there. I traced blood on to a thorn bush; evidence that he had run into the bush. From the bush I traced him to the fence, where the path crosses leading to the home of Jim Walker, father of the defendant. I saw no traces of blood beyond the fence."

W. A. Fairchild, for the State, gave substantially the same account; stating, further, that about a month before the occurrence, in hunting the woods for bees, he had found defendant, Grover Walker, working in a blockade distillery, and reported it; and three or four days before, said defendant passed witness's home, cursed witness and said he would kill him. He further testified, that some forty or fifty shots were fired in rapid succession from a shot gun and pistol, and too close together to have been fired by one person; and further, that next morning they found in the yard two piles of empty shotgun shells No. 12, about two feet apart, and also four or five empty pistol shells near the same place.

Jimmie Poach, for the State, testified: "On the night of the 13th of November I was at the house of Jim Walker. Jim Walker came into the room where I was sleeping, waked me up, told me that Grover Walker was very badly shot, between 12 and 1 o'clock. I went into the room, found Grover there with one eye shot out, several shots in his face and in his shoulder."

John Palier testified: "I am a merchant living in Caldwell County. On the evening of 13th November, Lone Walker came to my store and bought 4 boxes of shotgun shells; two No. 12 and two No. 16. He asked me to go down to his home. He lived about ¼ of a mile from my store and about six or seven miles from W. A. Fairchild. I went down to his home, found Grover Walker there, saw Grover have pistol No. 38. I left them both there together between 8 and 9 o'clock. Lone Walker, a short time before this, had been

suffering with a carbuncle on his neck and had had a doctor with him."

The doctor testified, that on the following day he was called in to see defendant, Grover Walker, and found one eye shot out. It further appeared that defendants were brothers.

Grover Walker did not resist verdict. The defendant, Lone Walker, requested the Court to charge that there was not sufficient evidence to warrant a verdict against him. Declined, and defendant, Lone Walker, excepted. Verdict of guilty against both defendants. Judgment, and defendant Lone Walker excepted and appealed.

*Assistant Attorney General Hayden Clement* for the State. *Finley & Hendren* and *J. A. Holbrook* for defendant.

HOKE, J. The controlling principle on a question of this character is very well stated by *Merrimon, J.,* in *State v. White,* 89 N. C., 464-465, as follows:

"It is well settled law, that the Court must decide what is evidence, and whether there is any evidence to be submitted to the jury, pertinent to an issue submitted to them. It is as well settled, that if there is evidence to be submitted, the jury must determine its weight and effect. This, however, does not imply that the Court must submit a scintilla—very slight evidence; on the contrary, it must be such as, in the judgment of the Court, would reasonably warrant the jury finding a verdict upon the issue submitted, affirmatively or negatively, accordingly as they might view it in one light or another, and give it more or less weight, or none at all. In a case like the present one, the evidence ought to be such as if the whole were taken together and substantially as true, the jury might reasonably find the defendant guilty.

"A single isolated fact or circumstance might be no evidence, not even a scintilla; two, three or more, taken together, might not make evidence in the eye of the law, but a multitude of slight facts and circumstances, taken together as true,

might become (make) evidence that would warrant a jury in finding a verdict of guilty in cases of the most serious moment. The Court will be the judge as to when such a combination of facts and circumstances reveal the dignity of evidence, and it must judge of the pertinency and relevancy of the facts and circumstances going to make up such evidence. The Court cannot, however, decide that they are true or false; this is for the jury; but it must decide that, all together, they make *some evidence* to be submitted to the jury; and they must be such, in a case like the present, as would, if the jury believed the same, reasonably warrant them in finding a verdict of guilty."

Substantially the same statement has been announced and upheld in other decisions of this Court. *State v. Carmon,* 145 N. C., 481; *State v. Costner,* 127 N. C., 566; *State v. Lytle,* 117 N. C., 799; *State v. Christmas,* 101 N. C., 749, and its correct application requires that, on the facts presented here, the verdict and judgment should be sustained. While the testimony tending to inculpate Lone Walker, the appellant, is not very extended, when considered in connection with the facts which were admitted or established on the trial, it has much more significance than would appear on a cursory examination. It was established that the home was shot up by at least two persons, and that Grover Walker was one of them; that it was done by a pistol and gun, the pistol being a 38 calibre, that was the size of the bullet taken out of Jesse Fairchild's arm, and the gun, a shotgun No. 12; forty or fifty shots were fired, and in the morning a large number of empty shotgun shells, size No. 12, and four or five empty pistol cartridges, calibre 38, were found in the yard. On the evening of the occurrence, at a store in Caldwell County, six or seven miles from the house, Lone Walker, the appellant and brother of Grover, bought four boxes of shotgun shells, two No. 12 and two No. 16, and the merchant who sold them, on going home with Lone, one-fourth mile distant,

found his brother, Grover, there armed with a 38-calibre pistol, and testified that he left them there together at 8 or 9 o'clock P. M., this giving them ample time to have gone to the house of Fairchild at the time indicated, 11 or 12 o'clock. No one duly considering this testimony would entertain a reasonable doubt, certainly it is an inference fairly deducible, that the shells bought at the store by Lone Walker were the shells used in firing the house, and, if they were, who used them? Defendant was the brother of Grover, whose blockade still had been reported by W. A. Fairchild, the occupant of the house. He was with his brother on the night of the occurrence within six or seven miles of the house, and with ample time to have been present. It was admitted that Grover was present. His brother Grover had a companion assisting him. Defendant that very evening bought the shells that were used, or there is evidence sufficient, certainly, to justify that conclusion. The empty shells on the ground proved to be shotgun shells No. 12, the same size as two of the boxes that Lone Walker had procured and purchased a few hours of the occurrence, and the pistol used was a No. 38, the same calibre as the pistol that Grover Walker was shown to have had when he was at Lone Walker's home.

Under the decisions referred to, and others of like import, these facts, we think, rise to the dignity of evidence, justifying the conclusion that Lone Walker was the person who assisted his brother on the occasion in question, and upholding the ruling of the Court in submitting the question of his guilt or innocence to the jury. The testimony tending to support the position is stronger than in many of the cases where a verdict of guilty has been upheld.

There is no error, and the judgment below will be affirmed.

No error.