The defendant was convicted of burning a tobacco barn, and from the judgment upon such conviction, appealed to this Court.
Defendant's exceptions 5 and 6 were addressed to the refusal of the judge, at the conclusion of the State's evidence, to give judgment as of nonsuit against the State, and again at the conclusion of all the evidence.
The indictment was based upon C.S. 4244: "Every person convicted of the willful burning of any gin house or tobacco house, or any part thereof, shall be imprisoned in the State's Prison not less than two nor more than ten years."
The State's evidence tended to show that some time during the night of 23 December, 1920, a tobacco barn of J. W. Douthit, otherwise called Jack Douthit, was burned. The same night the sawmill of M. W. Allen was badly and evidently maliciously injured by the same persons, as the State contended, who had burned the barn of Douthit. The (757) defendant Will Griffith was identified with this burning by the following circumstances:
Tom Martin had fled and had never been arrested. Allen and Douthit — Allen at the time knowing nothing of the injury to his mill — upon hearing of the burning, and on the morning of 24 December, went to the place and found the barn a mass of smoldering ruins. At and near the barn they discovered two new and distinctive tracks. These tracks they followed from the barn, measuring them from time to time, and they being plainly made in plowed ground by two persons who manifestly *Page 795 
were running. They followed these tracks to within one hundred yards of the defendant Will Griffith's house. There they saw Will Griffith coming from his home. After he had passed this time they immediately measured his track, as then made, and it corresponded exactly with one of the tracks made in going to and coming from the barn.
One of the men making these tracks had on a pair of rubber boots or shoes which fitted the longest track. The other was made by a kind of square-toed shoe. The latter correspond precisely with the tracks made by Will Griffith when Douthit and Allen saw him coming from his house the next morning. They also correspond with the tracks made to Will Griffith's house at the time the two men coming from the barn separated the night before. They followed the other track (the rubber-shoe track) towards the house of Tom Martin. They tracked them to within fifty or one hundred yards of Griffith's and Martin's houses. After the blunt-toed track, which led to Will Griffith's house, left the rubber-shoe track, the latter continued to Tom Martin's house. Then these two men, Douthit and Allen, went to the mill of M. W. Allen, having heard of the injury done to it, and found that at and near the mill were the same two tracks, the square-toed track and the rubber shoe track.
A few days before this occurrence, the prosecuting witness, Douthit, and Mr. Allen, went along with prohibition officers to the "cutting up" of a still near the home of Douthit's mother. The defendant Griffith saw both Douthit and Allen going with the officers to this still place where the still outfit was cut up at the time. It is clear, not only from the State's evidence, but from the evidence of the defendant himself, on his cross-examination, that the defendant Will Griffith was engaged with Tom Martin in the liquor business. They were seen, on the afternoon of 23 December, drinking together, and drinking too much.
The witness Lee Wood testified that Griffith and Tom Martin passed his house about 12:30 on the morning of 23 December, going east toward their homes. J. L. Riddle testified that he saw both Will Griffith and Tom Martin on 24 December near Douthit's store, both drinking and under the influence of liquor. Martin, in the presence of Griffith, referring to the Douthits, declared: "They have done us (758) dirt, and we will get even with them," meaning that they had destroyed their still and that they would "get even with them," or punish them for it.
After stating the case: We are of the opinion that the evidence, thus shortly stated, and interpreted according to the rule applied by this Court in determining the correctness of the ruling below refusing to grant judgment as of nonsuit, is sufficient to go to the jury upon the question of defendant's guilt. There was motive, opportunity, and direct evidence connecting him (Griffith) with the commission of the crime, which is to be inferred from the nature and character of the tracks which led to the houses of both men, the blunt-toed brogan-track to defendant Griffith's house, and the rubber-shoe track to Martin's house. As far as it is possible to identify tracks, these were shown to be those which had been made by defendant Griffith and Tom Martin, and conclusively so, if the witnesses were to be believed and their testimony was true. The defendant Griffith's testimony, if believed, showed an alibi, but as to this an issue was fairly submitted, and the jury, having found it against the defendant, evidently did not believe his evidence. Tom Martin was thus identified with the defendant Will Griffith, and Tom Martin left the country as soon as he found that he was indicted.
Defendant's exception 1 was addressed to this part of the testimony of Douthit on his redirect examination:
"Q. Where is Tom Martin? A. I don't know.
"Q. Has he left the country? (Defendant objects.) By the court: `I think that it is competent, as they have introduced evidence tending to identify the tracks belonging to the two men.' Objection overruled, dedefendant [defendant] excepts. A. Tom left the country when he found out he was indicted. He has not been in this country since that I know of."
The two men, according to all the evidence, were drinking together the afternoon of 23 December, were together when threats were made against Douthit by Martin, were together at 12:30 o'clock the morning of the burning, and the tracks were not only found side by side at the burned barn, but also at Allen's mill, and were followed from the barn, the one pair to Griffith's house, and the other pair to Martin's house. If ever two men were engaged in a common enterprise, these two men were. If, however, there was any error in the admission of this testimony, that error was cured by the testimony of the defendant himself.
Exception 2 was to the admission of testimony of two men (759) running away from Allen's mill the night it was injured. The witness did not know either Will Griffith or Tom Martin, but it had been established by the State's evidence that the same men who burned Douthit's barn did the injury at Allen's mill, and this was a circumstance to show that two men at the time were engaged in both offenses, and is admissible on the score of common enterprise, or as evidence of identity. *Page 797 
Exceptions 3 and 4 were taken to evidence that was plainly admissible for the same reason stated under exception 2.
Exception 7 was to part of the judge's charge upon the doctrine of reasonable doubt. This, however, has no foundation, as the judge's charge will show, which was as follows:
"Now, gentlemen, these are the contentions of the State and defendant. The law presumes that this defendant is innocent, and presumption of innocence remains with him until the State satisfies you beyond a reasonable doubt of his guilt. And reasonable doubt is something different from a mere shadow of a doubt or fanciful doubt?" The court, then, correctly explained to the jury what is meant by a reasonable doubt, and, after doing so, told the jury that upon due consideration of all the evidence in the case, if they were satisfied of the guilt of the defendant in the case, the State was entitled to a verdict. "In other words, the burden is on the State to satisfy you beyond a reasonable doubt of the guilt of this defendant. If the State has satisfied you beyond a reasonable doubt that the defendant, in company with Tom Martin, set fire to and burned the barn of Mr. Jake Douthit, on the night of 23 December, then, gentlemen of the jury, the court charges you that he is guilty, and it is your duty to so find, and if the State has failed to so satisfy you beyond a reasonable doubt of his guilt, it is your duty to give the defendant the benefit of any reasonable doubt there may be in your minds and return a verdict of not guilty."
As to the evidence relating to the tracks, see S. v. Daniels,134 N.C. 641; S. v. Adams, 138 N.C. 688; S. v. Hunter, 143 N.C. 607;S. v. Freeman, 146 N.C. 615; S. v. Taylor, 159 N.C. 465. The case of S. v. Adams, supra, seems to answer several of the objections raised in this appeal, and especially with respect to evidence as to motive, the tracks, and as to what was discovered at the mill.
The object of introducing evidence as to the tracks of the two men leading up to the mill, which had been injured, was not to show that another and different crime had been committed, but of tracing up both sets of tracks, those leading to the barn and those which led to the mill, for the ultimate purpose of identifying the parties who made them as being the same persons, there being also some evidence tending to show, or from which the jury might infer, that they were seen the same night at the mill, as well as at the barn which was burned. It was not that they were guilty of another and collateral offense, but (760) rather as tending to prove that they were the same men who had applied the torch to the mill, by their continued association with each other that night. It was all one continuous and connected transaction, the effort being principally, if not wholly, to follow the tracks so as to fully identify these nightly marauders as being the persons who were *Page 798 
also the incendiaries, and not to establish a distinct substantive offense in violation of the rule relied on by the prisoner, such as S. v. McCall,131 N.C. 798; S. v. Shuford, 69 N.C. 487; S. v. Frazier, 118 N.C. 1257;S. v. Alston, 94 N.C. 930. The evidence also tended to establish, not only the identity of the persons who burned the mill, both by the tracks, and the malice they evidently had toward J. W. Douthit and M. W. Allen, the owners of the property destroyed, this supplying the motive for their conduct. If a person has the malice, or motive, to burn a mill (S. v. Adamssupra), and there are other means of identifying him as the culprit, both may be shown as evidence of his guilt, without being obnoxious to the rule, excluding facts relating to a separate, distinct, and collateral offense. There never was a clearer or more conclusive showing that the tracks were those of Griffith and his associate in the crime, and that they were out that night to avenge the destruction of the still, they being engaged in the illicit manufacture of whiskey. Whether the evidence was sufficient for a conviction was distinctly and solely for the jury to decide, there being some evidence of guilt, the jurors being the judges of its weight or strength.
There was no error in the case, and it will be so certified.
No error.
ADAMS, J. This opinion was written by Mr. JUSTICE WALKER in accordance with the decision of the Court, but was filed and adopted after his death.
Cited: S. v. Young, 187 N.C. 700; S. v. Ashburn, 187 N.C. 723; S. v.McLeod, 198 N.C. 652; S. v. Spivey, 198 N.C. 658; S. v. Ferrell,205 N.C. 643; S. v. Coffey, 210 N.C. 563; S. v. Strickland, 229 N.C. 210;S. v. Glatly, 230 N.C. 178; S. v. Palmer, 230 N.C. 213.