STATE v. WILBUR McLEOD.

(Filed 30 April, 1930.)

1. **Homicide G a—Circumstantial evidence of guilt of murder in first degree held sufficient to be submitted to the jury.**

Evidence tending to show that the deceased was ravished by some one suffering from gonorrhea, and that she died from the assault and choking, with further evidence that the defendant had the disease, and that, while searching for the deceased, witnesses heard some one run away from the direction where the body was found, and that tracks, incapable of identification, were found at the scene of the crime, and that clear, distinct tracks were found nearby corresponding in every particular with the shoes of the defendant, including peculiar marks of the rubber heels, and that the tracks led to the house where the defendant lived, with further evidence that the defendant was familiar with the premises and that he was in the immediate vicinity of the crime on Thursday preceding the homicide on Tuesday in contradiction of his testimony that he had not been in the neighborhood for a period of two weeks, is sufficient to take the case to the jury and to sustain their verdict of guilty of murder in the first degree, and defendant's motion as of nonsuit, C. S., 4643, was properly overruled.

2. **Criminal Law G n—Circumstantial evidence is often an essential instrumentality in the ascertainment of truth.**

Circumstantial evidence is not only a recognized and accepted instrumentality in the ascertainment of truth, but in many cases is quite essential to its establishment.

3. **Criminal Law G p—Testimony of similarity between shoes of defendant and tracks found near scene of crime held competent.**

Where foot tracks found in connection with a crime correspond in every particular with the shoes of the defendant, including a peculiar mark on the rubber heels, evidence of such similarity is competent as tending to identify the accused as the perpetrator of the crime, the probative value of such evidence depending upon the attendant circumstances.

4. **Criminal Law G m—Sufficiency of evidence of guilt to be submitted to the jury.**

In cases where the State relies upon circumstantial evidence for a conviction, the circumstances and evidence must be such as to produce in the minds of the jurors a moral certainty of the defendant's guilt and to exclude any other reasonable hypothesis, but the evidence should be submitted to them if there is any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises only a suspicion or conjecture, and it is for the jury to say whether they are convinced from the evidence of the defendant's guilt beyond a reasonable doubt.

5. **Criminal Law I j—Upon motion as of nonsuit the evidence will be considered in the light most favorable to the State.**

The function of the court when considering a motion to nonsuit is to determine the sufficiency of the evidence to support the verdict, it being

the province of the jury to pass upon the weight and credibility of the evidence, and where the evidence viewed in the light most favorable to the State is sufficient to sustain a verdict of guilty, the defendant's motion as of nonsuit should be denied. C. S., 4643.

**6. Criminal Law G a—Where the defendant introduces no evidence the question of guilt is for the jury under the presumption of innocence.**

A defendant in a criminal prosecution may rely upon the presumption of his innocence, which remains with him throughout the trial, and introduce no evidence in his own behalf, and though this may have its moral effect on the jury, it does not of itself create a presumption against him as a matter of law, and the question of his guilt is for the determination of the jury under the evidence, with the burden upon the State to prove him guilty beyond a reasonable doubt. C. S., 1799.

BROGDEN, J., dissenting.

APPEAL by defendant from *Midyette, J.,* at May Term, 1929, of LEE.

Criminal prosecution tried upon an indictment charging the prisoner with the murder of one Rebecca Matthews.

The evidence on behalf of the State tends to show that on the night of 27 March, 1928, about 11 p.m., Mrs. Rebecca Matthews, a woman 77 or 78 years of age, was dragged from her home a distance of thirty yards to the edge of a field where she was found dead soon after midnight, having been brutally assaulted, choked, manhandled, bruised and ravished by some one with gonorrhea, such as the prisoner had. She died from the assault, shock and choking.

The first witnesses who came to the aid of the 80-year-old husband, himself quite feeble and senile, in searching for his missing wife, heard some one run away from the direction of where the body was found. Toe prints were discovered at the feet of the deceased, apparently made by No. 8 square-toed shoes, such as the defendant wore. Signs of tracks could be seen, but not identified because of the character of the ground, going from the body to a potato patch, a distance of approximately 75 or 100 yards, but here the ground was soft and the tracks became quite distinct and clear. Similar tracks were identified at a number of places along a tortuous course, apparently taken by the murderer, which led to the home of William McLeod, father of the defendant, where the prisoner also lived and was found in bed about 3 or 4 o'clock in the early morning of 28 March, 1928. The shoes which Wilbur McLeod had at that time were freshly polished and corresponded in every particular with the identification made by the measurements and by placing the shoes in a number of the tracks. The prisoner's shoes measured 11½ inches in length. The sole on the right shoe was 6 inches long, while that on the left measured 6¼ inches. They were both 4¼ inches in width. The distance from heel to sole on the left shoe was 2 inches, and the distance from heel to sole on the right shoe was 2¼ inches. The

tracks on the ground showed these identical measurements. They also showed the imprint of rubber heels with peculiar marks, similar to those on the prisoner's shoes. The identification of the tracks as having been made by the defendant's shoes was quite complete.

When arrested, the defendant first told the officers that he had been over to see his aunt that night and had returned about 12 o'clock. Later he said he was in by 11 o'clock; that he slept with his father and that his father was in bed when he came in. The prisoner was then asked where he was from 9 o'clock until he got home. His reply was: "I might have been in earlier than that." The defendant's father, on being asked what time his son came in that night, said: "I went to bed at 9 o'clock and he was in bed then." The defendant started to say something, but the officer told him to "keep quiet." He was nervous and tears came in his eyes.

The prisoner was the only person in William McLeod's house whose shoes could have made the tracks in question. It was also found that he alone of the three negro men in said house who were arrested and examined, was suffering from the particular venereal disease, evidence of which was left on the body of the deceased by the person who raped her.

It was further in evidence that the defendant was familiar with the premises and knew the deceased and her husband. He claimed not to have been in that neighborhood for two weeks prior to the killing, but the State's evidence showed that he was in the immediate vicinity on Thursday preceding the homicide on Tuesday.

The defendant offered no evidence, but lodged a motion at the close of the State's case for judgment as of nonsuit under C. S., 4643. Overruled and exception.

Verdict: Guilty of murder in the first degree.

Judgment: Death by electrocution.

The prisoner appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Young & Young for defendant.*

STACY, C. J., after stating the case: The only question presented is the sufficiency of the evidence to warrant the verdict. It is stronger on the present record than it was on the first appeal, 196 N. C., 542. And it would seem that the evidence in the instant case is fully as strong as that which was submitted to the jury in the following cases: *S. v. Allen,* 197 N. C., 684; *S. v. McKinnon,* 197 N. C., 576; *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395; *S. v. Melton,* 187 N. C., 481, 122 S. E., 17;

STATE *v.* McLEOD.

*S. v. Young,* 187 N. C., 698, 122 S. E., 667; *S. v. Griffith,* 185 N. C., 756, 117 S. E., 586; *S. v. Bynum,* 175 N. C., 777, 95 S. E., 101; *S. v. Matthews,* 162 N. C., 542, 77 S. E., 302; *S. v. Taylor,* 159 N. C., 465, 74 S. E., 914; *S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625.

True, the evidence is circumstantial, but circumstantial evidence is, not only a recognized and accepted instrumentality in the ascertainment of truth, but in many cases quite essential to its establishment. *S. v. Plyler,* 153 N. C., 630, 69 S. E., 269.

The evidence as to the identity of the tracks was competent. *S. v. Lowry,* 170 N. C., 730, 87 S. E., 62. Indeed, it may be stated as a general rule that the correspondence of tracks, footprints, or ground marks, found in connection with a crime, with the track, footprint, or shoe mark of one accused of the crime, or with the track, footprint, or shoe mark of his horse, or with the track, tread, or wheel mark of his wagon, buggy, or automobile, is admissible in evidence as tending to identify the accused as the perpetrator of the crime, the probative value of such evidence, of course, depending upon the attendant circumstances. *S. v. Young, supra; S. v. Griffith, supra; S. v. Taylor, supra; S. v. Fain,* 177 N. C., 120, 97 S. E., 716; *S. v. Martin,* 173 N. C., 808, 92 S. E., 597; *S. v. Freeman,* 146 N. C., 615, 60 S. E., 986; *S. v. Hunter,* 143 N. C., 607, 56 S. E., 547; *S. v. Adams,* 138 N. C., 688, 50 S. E., 765; *S. v. Daniels,* 134 N. C., 641, 46 S. E., 743; *S. v. Morris,* 84 N. C., 756; *S. v. Reitz,* 83 N. C., 634; *S. v. Graham,* 74 N. C., 646; Annotation: 31 A. L. R., 204.

Speaking to the subject in *S. v. Spencer,* 176 N. C., 709, 97 S. E., 155, *Walker, J.,* delivering the opinion of the Court, said: "The testimony as to the fitting of the shoe to tracks found where the prisoner had been seen was admissible, as it was a circumstance tending to show identity. . . . This is 'real' evidence, as called by the civilians, and its value as proof is greater or less, according to the circumstances. . . . It is some evidence tending to identify the prisoner as the perpetrator of the crime."

It is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue. *S. v. Bridgers,* 172 N. C., 879, 89 S. E., 804; *S. v. White,* 89 N. C., 462. And it may be readily conceded that this is one of the border-line cases. But viewing the evidence in its most favorable light for the State, the accepted position on a demurrer or motion to nonsuit, we are of opinion that it is of sufficient probative value to warrant its submission to the jury. *S. v. Vaughn,* 129 N. C., 502, 39 S. E., 629.

The general rule is, that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a

fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury; otherwise not, for short of this, the judge should direct a nonsuit or an acquittal in a criminal prosecution. *S. v. Vinson,* 63 N. C., 335. But if the evidence warrant a reasonable inference of the fact in issue, it is for the jury to say whether they are convinced beyond a reasonable doubt of such fact, the fact of guilt. *S. v. Blackwelder,* 182 N. C., 899, 109 S: E., 644.

The function of the court when considering a motion to nonsuit, is, not to pass upon the weight of the evidence, but to determine its sufficiency to support the verdict. *S. v. King,* 196 N. C., 50, 144 S. E., 518. Or as said in *S. v. Carlson,* 171 N. C., 818, 89 S. E., 30; "The motion to nonsuit requires that we should ascertain merely whether there is any evidence to sustain the allegations of the indictment. The same rule applies as in civil cases, and the evidence must receive the most favorable construction in favor of the State for the purpose of determining its legal sufficiency to convict, leaving its weight to be passed upon by the jury. *S. v. Carmon,* 145 N. C., 481; *S. v. Walker,* 149 N. C., 527; *S. v. Costner,* 127 N. C., 566. The effect of Laws 1913, ch. 73, allowing a motion for nonsuit in a criminal case, was considered in *S. v. Moore,* 166 N. C., 371, *S. v. Gibson,* 169 N. C., 318. Where the question is whether there is evidence sufficient to warrant a verdict, this Court considers only the testimony favorable to the State, if there is any, discarding that of the prisoner. *S. v. Hart,* 116 N. C., 976. The weight of the evidence and the credibility of the witnesses are matters for the jury to pass upon. *S. v. Utley,* 126 N. C., 997."

The accepted rule, it is true, is that, in cases where the State relies upon circumstantial evidence for a conviction, the circumstances and evidence must be such as to produce in the minds of the jurors a moral certainty of the defendant's guilt and to exclude any other reasonable hypothesis. *S. v. Matthews,* 66 N. C., 106; *S. v. Melton, supra.* Here, the incriminating evidence, taken in its entirety, if accepted and believed by the jury, would seem to be sufficient to warrant the verdict. *S. v. McLeod, supra.* This is as far as we are permitted to go in considering the defendant's demurrer to the evidence or motion for judgment as in case of nonsuit under C. S., 4643.

The fact that the defendant offered no evidence, but relied upon the legal presumption of innocence and the weakness of the State's case, is not to be taken against him. C. S., 1799. The presumption of innocence which surrounds a defendant on his plea of "not guilty," goes with him throughout the trial and is not overcome by his failure to testify in his own behalf. He is not required to show his innocence. The burden is on the State to prove his guilt beyond a reasonable doubt.

*S. v. Singleton*, 183 N. C., 738, 110 S. E., 846. And while his absence from the witness stand or his failure to testify, may be a circumstance not without its moral effect upon the jury, of which every lawyer appearing for a defendant is always conscious, yet this fact, as a matter of law, creates no presumption against him, and is not a proper subject for comment by the solicitor in arguing the case to the jury. *S. v. Tucker,* 190 N. C., 708, 130 S. E., 720.

The rulings in *S. v. Montague,* 195 N. C., 20, 141 S. E., 285, *S. v. Rhodes,* 111 N. C., 647, 15 S. E., 1038, *S. v. Goodson,* 107 N. C., 798, 12 S. E., 329, *S. v. Brackville,* 106 N. C., 701, 11 S. E., 284, and *S. v. Massey,* 86 N. C., 660, are distinguishable, as they were based upon facts essentially different from those appearing on the present record.

A searching scrutiny of the record leaves us with the impression that the case was properly submitted to the jury.

No error.

BROGDEN, J., dissenting: I dissented in the former appeal reported in 196 N. C., 542, for the reason that the evidence "was vague, uncertain and inconclusive as to the vital fact of guilt."

The evidence in the present case is no stronger than that produced at the former hearing.

The only evidence of identity having any probative value at all, is certain tracks found at a distance of 110 or 150 yards from the body. None were found nearer than that.

The defendant lived within a mile or a mile and a quarter of the deceased and had lived there all his life. The purported tracks were traced four or five miles beyond the defendant's house and then doubled back, making in the aggregate a distance of eight or nine miles. The murder was committed about 11:00 or 11:30 at night, and the officers arrived at the home of the defendant about 4:00 in the morning, and he was in bed. At the former hearing, bloodhounds had followed these tracks over the long and circuitous route testified to. When the hounds arrived at the home of the defendant they stopped within thirty feet of the house, and when the defendant was brought out the dogs "did not bay or indicate him in any way." The Court held that the dog evidence was incompetent and a new trial was awarded. In this appeal the witnesses followed the same route the dogs followed in the former appeal. Hence the same evidence is still here, with the dogs left out. The practical result is that the defendant is perhaps convicted upon evidence that the Court has already held to be incompetent and inadmissible.

Moreover, the tracks found in the potato-patch about 150 yards from the body were ordinary tracks made by a broad-toed number 8 shoe. Some of the witnesses at the trial were wearing broad-toed number 8 shoes,

although they testified that they did not make the tracks. The sheriff testified that "any shoe of that make and style would have made the same kind of track."

The defendant sat up with a sick baby of the witness Campbell on Tuesday night preceding the murder on the following Monday. Campbell's house is near the potato-patch referred to, where the tracks were found. There is no evidence that the tracks were fresh or that they were not there before the murder was committed.

Reviewing the entire record, I am of the opinion that the evidence is too thin and too scant to justify the taking of life.